**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Nicholas Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*

### UNITED STATE DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WAYNE SKILES, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TESLA, INC., EXPERIAN INFORMATION SOLUTIONS, INC.,**<br><br>**Defendants.** | **Case No.: 3:17-cv-05434-WHO**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT EXPERIAN INFORMATION SOLUTION, INC.'S RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Judge:** Hon. William H. Orrick<br>**Ctrm:** 2, 17th Floor<br>**Date:** February 19, 2020<br>**Time:** 2:00 p.m. |

*KAZEROUNI LAW GROUP, APC*
*Costa Mesa, CA 92626*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.   INTRODUCTION ..................................................................... 1

II.  BRIEF STATEMENT OF FACTUAL ALLEGATIONS ................................. 2

III. LEGAL STANDARD ON MOTION TO DISMISS UNDER RULE 12(b)(6) ............ 2

IV.  EXPERIAN'S "WRONG PARTY" ARGUMENT IS NOT GROUNDS FOR
     DISMISSAL ON THE PRESENT MOTION ........................................... 3

V.   THE MOTION TO DISMISS THE FCRA CLAIM SHOULD BE DENIED ............ 6

     A.  Plaintiff has Adequately Plead a Claim Under the FCRA ................... 6

         1.  Experian's Mosaic Score is a Consumer Report ........................ 7

             i.   Mosaic score is comprised of at least one of the seven characteristics ........ 8

             ii.  Experian knew or expected that the consumer data would be used for
                  establishing credit or in connection with a business transaction involving
                  the consumer ........................................................... 8

                  a.  Experian's Mosaic score is intended to be utilized in connection with
                      a business transaction involving the consumer ..................... 8

                  b.  Experian intended the Mosaic score to be utilized as a factor in
                      establishing credit ................................................ 9

                  c.  FTC's opinion is vital to interpreting the FCRA in this case ........... 12

             iii. Experian's case law is distinguishable ............................... 12

         2.  Experian Provided the Consumer Reports Knowing the Report was Being
             Used in An Impermissible Way ......................................... 13

             i.   Experian's consumer report was impermissibly used .................. 14

             ii.  Even if a permissible purpose existed, this does not provide consent for an
                  impermissible purpose ............................................... 16

             iii. Even though the report is used for an unauthorized purpose, it still meets
                  the definition of a consumer report .................................. 19

         3.  Plaintiff sufficiently alleged that Experian's Violation was Willful ............ 20

**B.   Electronic Communication Protection Act** ...........................................................21

**C.   Driver's Privacy Protection Act** .......................................................................21

**VI.   CONCLUSION** ................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Trans Union, LLC*,
 240 F.R.D. 564 (C.D. Ca. 2007) ················································ 19

*Albu v. Home Depot, Inc.*,
 2015 U.S. Dist. LEXIS 177228 (N.D. Ga. Oct. 26, 2015) ···················· 12, 15

*Arcidiacono v. Am. Exp. Co.*,
 1993 U.S. Dist. LEXIS 4042 (D.N.J. Mar. 29, 1993)························· 12, 13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ·············································································· 2

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ·············································································· 2

*Bernardi v. JPMorgan Chase Bank, NA.*,
 2012 U.S. Dist. LEXIS 1951, 2012 WL 33894 (N.D. Cal., Jan. 6, 2012)··················· 3

*Boone v. T-Mobile USA Inc.*,
 2018 U.S. Dist. LEXIS 14951 (D.N.J. Jan. 26, 2018) ························ 13-14

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council*,
 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ························· 12

*Comeaux v. Brown & Williamson Tobacco Co.*,
 915 F.2d 1264 (9th Cir. 1990)·············································· 8, 19

*Gordon v. City of Oakland*,
 627 F.3d 1092 (9th Cir. 2010) ·················································· 3

*Greenway v. Info. Dynamics, Ltd.*,
 399 F.Supp. 1092 (D.Ariz. 1974) aff'd 524 F.2d 1145 (9th Cir. 1975) ·············· *passim*

*Guimond v. Trans Union Credit Info. Co.*,
 45 F.3d 1329, 95 Cal. Daily Op. Service 477 (9th Cir. 1995) ·························· 7, 16

*Harrington v. ChoicePoint Inc.*,
 2006 U.S. Dist. LEXIS 101903 (C.D. Cal. Oct. 11, 2006) ························ 9

*Heaton v. Soc. Fin., Inc.*,
 U.S. Dist. LEXIS 141306, 2015 WL 6744525 (N.D. Cal. Nov. 4, 2015) ················ 14

*Hornish v. King Cty.*,
 899 F.3d 680 (9th Cir. 2018) ·················································· 4

*Howard v. Crim. Info. Servs.*,
654 F.3d 887 (9th Cir. 2011) ················································· 3

*Huertas v. Citigroup, Inc.*,
2014 U.S. Dist. LEXIS 117348 (D.N.J. Aug. 21, 2014)················· 18-19

*Johnson v. Wells Fargo Home Mortg., Inc.*,
558 F.Supp.2d 1114 (D.Nev. 2008) ······································· 13

*Jones v. Best Serv. Co.*,
2017 U.S. Dist. LEXIS 16456 (C.D. Cal. Feb. 6, 2017)··················· 15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ·············································· 3-4

*Kinder v. Harrah's Entm't, Inc.*,
2008 U.S. Dist. LEXIS 132290 (S.D. Cal. Jan. 22, 2008)··············· 5, 6

*Korotki v. Attorney Servs. Corp.*,
931 F.Supp. 1269 (D.Md. 1996) ··········································· 18

*Korotki v. Thomas, Ronald & Cooper, P.A.*,
1997 U.S. App. LEXIS 34157 (4th Cir. Dec. 5, 1997) ···················· 18

*Levine v. World Fin. Network Nat'l Bank*,
437 F.3d 1118 (11th Cir. 2006) ··········································· 17

*Lukens v. Dunphy Nissan, Inc.*,
2004 U.S. Dist. LEXIS 14528 (E.D. Pa. July 26, 2004)··················· 16

*Miller v. Dish Network, L.L.C.*,
326 F. Supp. 3d 51 (E.D. Va. 2018) ······································ 18

*Miller v. Oceanside Police Dep't*,
2009 U.S. Dist. LEXIS 115336 (S.D. Cal. Dec. 10, 2009)·················· 4

*Mone v. Dranow*,
945 F.2d 306 (9th Cir. 1991) ·············································· 8

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990)············································· 22

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ·············································· 5

*Pintos v. Pac. Creditors Ass'n*,
565 F.3d 1106 (9th Cir. 2009) ············································ 17

*Qureshi v. Penkhus Motor Co.*,
  2016 U.S. Dist. LEXIS 133431, 2016 WL 5372184 (D. Colo. Sept. 26, 2016) ······· 14, 17

*Rodriguez v. Your First Choice, LLC*,
  2017 U.S. Dist. LEXIS 177368 (D.Nev. Oct. 25, 2017) ···································· 16

*Rosco v. Experian Info. Sols.*,
  2017 U.S. Dist. LEXIS 201865 (E.D. Wash. Dec. 7, 2017) ····························· 15

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) ·························· 6, 20

*Steinmetz v. Am. Honda Fin.*,
  2019 U.S. Dist. LEXIS 157379 (D.Nev. Sep. 16, 2019) ································· 5

*Stergiopoulos v. First Midwest Bancorp, Inc.*,
  427 F.3d 1043 (7th Cir. 2005) ···························································· 15

*Syed v. M-I, LLC*,
  853 F.3d 492 (9th Cir. 2017) ······························································ 6

*Trans Union Corp. v. FTC*,
  345 U.S. App. D.C. 301, 245 F.3d 809 (2001) ········································· 20

*Traveler v. Glenn Jones Ford Lincoln Mercury 1987, Inc.*,
  2006 U.S. Dist. LEXIS 2631 (D.Ariz. Jan. 24, 2006) ····················· 12, 14, 15

*United States ex rel. Lee v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ······························································ 4

*United States v. Wilson*,
  896 F.2d 856 (4th Cir. 1990) ······························································ 9

*Yang v. Government Employees Ins. Co.*,
  146 F.3d 1320 (11th Cir. 1998) ·························································· 19

**STATUTES**

15 U.S.C. § 1681 *et seq.* ································································· *passim*

15 U.S.C. § 1681a(d)(1) ·································································· *passim*

15 U.S.C. § 1681a(d)(1)(A) ································································ 19

15 U.S.C. § 1681b(a)(3) ··································································· 18

15 U.S.C. § 1681b(a)(3)(A) ······························································ 13

15 U.S.C. § 1681b(a)(3)(E) ······························································ 12

15 U.S.C. § 1681b(a)(3)(F) ······························································ 19

15 U.S.C. § 1681b(a)(3)(F)(i) ········································· 13, 14

15 U.S.C. § 1681b(f) ················································································· 16

15 U.S.C. § 1681e·················································································· 16

15 U.S.C. § 1681s(a) ·············································································· 12

**RULES**

Fed. R. Civ. P. 12(b)(6) ········································································· 3, 5

**OTHER**

Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking
and Currency, 91st Cong. 2 (1969) ····················································· 6

Webster's 3rd International Dictionary, 1971 ················································· 9

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

## I.      INTRODUCTION

The defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Defendant" or "Experian") is alleged to have intentionally and unlawfully disseminated individualized consumer reports to defendant TELSA, INC. ("Tesla") based on information Experian obtained from consumers, such as plaintiff WAYNE SKILES ("Plaintiff").

As a guardian and furnisher of credit, Experian has a duty to be truthful and protective of a consumer's credit information. Despite this duty, Experian allowed Tesla access to consumer data maintained by Experian. Upon Tesla's request, Experian produced to Tesla sensitive consumer information based on credit summaries and automotive data neatly packaged into a "Mosaic" score. To make matters worse, Experian pulls consumers' profiles based on data Experian unlawfully intercepts from scans of driver's licenses of unsuspecting consumers.

Through software on Tesla's iPad, the data embedded in a consumer's drivers' license is redirected from the driver's license to Tesla's servers and Experian's servers. Once on Tesla's servers, Tesla creates a customer profile designed to keep track each consumer's habits, such that Tesla is then able to target the individual based on its previous and current purchases.

Each consumer profile's accuracy is strengthened by a consumer credit report provided to Tesla from Experian, in instantaneous fashion. Using the information Tesla captured from the driver's license, Experian accesses the consumer's credit summaries and automotive data to create score that is assigned to the consumer. This score conveys information significant assessing an individual's credit eligibility, such as the consumer's estimated age, income, and credit quality. Tesla then uses this information to rank the importance of the customer based on the likelihood the consumer will be eligible to obtain credit financing to purchase an automobile from Tesla.

Experian chose to sell consumer information that was entrusted to it, thus sacrificing the privacy of numerous consumer's nationwide. Due to these unlawful acts, Plaintiff seeks to enforce Plaintiff's rights and the rights of the putative class members victimized by Experian and Tesla's numerous violations of consumer privacy laws.

//

## II.   BRIEF STATEMENT OF THE FACTUAL ALLEGATIONS

In August of 2015, Plaintiff visited a Tesla vehicle showroom in Newport Beach, California. FAC, ¶ 17. While browsing, Plaintiff was approached by a Tesla employee known as a product specialist ("Product Specialist") who initiated a conversation with Plaintiff. *Id.* at ¶ 18. After being offered a test drive in a Tesla vehicle, Plaintiff responded that he was interested. *Id.* at ¶ 19. Subsequently, the Product Specialist informed Plaintiff that the Product Specialist would need to validate Plaintiff's license before Plaintiff could test drive a vehicle. *Id.* at ¶¶ 19-20. Plaintiff reasonably believed that his driver's license would merely be examined to ensure that it was valid driver's license. *See id.* at ¶ 21.

The Product Specialist then took Plaintiff's driver's license and scanned the driver's license using an iPad. *Id.* at ¶ 23. Unbeknownst to Plaintiff, this iPad that had an internally utilized proprietary software application that allowed for the Product Specialist to upload Plaintiff's information from the card. *Id.* at ¶ 23. Plaintiff's personal information was instantaneously reproduced from the card and placed into Tesla's consumer database, and in the same instant, sent to Experian. *Id.* at ¶¶ 24, 28, 29 and 76. Experian, in turn, provided Tesla with a "Mosaic" score, which was a credit evaluation of Plaintiff based upon Plaintiff's summarized credit and automotive data. *Id.* at ¶ 30.

Plaintiff had not previously been made aware that his personal information had been reproduced from his license onto Tesla's systems. *Id.* at ¶ 27. After the scan had already occurred, the Product Specialist requested Plaintiff's email address and phone number to add to its system. *Id.* at ¶ 25.

As a consequence of the above, the FAC asserts causes of action against Experian under (1) The Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721, *et seq.*; (2) The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, *et seq.*; and (3) The Fair Credit Reporting Act, ("FCRA") 15 U.S.C. §§ 1681, *et seq.* FAC, ¶¶ 5-7.

## III.   LEGAL STANDARD ON MOTION TO DISMISS UNDER RULE 12(b)(6)

A complaint survives a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft*

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual plausibility exists on the face of the complaint if, "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether to dismiss, a court "must construe the allegation made in the complaints in Plaintiffs' favor." *Howard v. Crim. Info. Servs.*, 654 F.3d 887, 891 (9th Circ. 2011) (citing *Gordon v. City of Oakland*, 627 F.3d 1092, 1095 (9th Cir. 2010).

## IV.   EXPERIAN'S "WRONG PARTY" ARGUMENT IS NOT GROUNDS FOR DISMISSAL ON THE PRESENT MOTION

For the first time in a motion to dismiss, Experian contends that Plaintiff has sued the wrong Experian entity. Experian Memo., 1:18-20. Experian now contends that the correct entity is Experian Marketing Services, Inc. *Id.* at 1:20-21. Experian did not raise such challenge in its initial motion to dismiss filed nearly two years ago on January 24, 2018 (Dkt. No. 62).  In any event, the FAC should not be dismissed on such asserted wrong party ground on this motion to dismiss under Fed. R. Civ. P. 12(b)(6) which looks to the sufficiency of the pleadings.

Consideration of a document under the incorporation by reference doctrine is different from taking judicial notice of facts. Although Experian notes in its footnote 1 that a court may consider webpages cited in a complaint under the incorporation by reference doctrine, Experian appears to only asks that the Court take judicial notice of the online document. Experian Memo., 6:15-18.  Experian asks too much in requesting judicial notice of purported facts that "Experian does not furnish Mosaic scores" and is "instead, a Mosaic score is a marketing product prepared by an entirely different Experian entity (Experian Marketing Services, Inc.)," Experian Memo., 6:16-18, which seems to asks the Court to look at an online document and interpret its meaning (or truth) based on inferences or the mere statement of the name "Experian Marketing Services."

Although Experian did not file a separate request for judicial notice, at most, the Court may judicially notice the existence and authenticity of the online document referenced in footnote 3 of the FAC. Judicial notice of matters of public record is limited to the existence and authenticity of a document; the veracity and validity of the contents remain open to dispute.

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

*Bernardi v. JPMorgan Chase Bank, NA*., No. C-11-04543 RMW, 2012 U.S. Dist. LEXIS 1951, 2012 WL 33894, *1 n. 1 (N.D. Cal., Jan. 6, 2012). Indeed, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see also*, *Hornish v. King Cty.*, 899 F.3d 680, 703 (9th Cir. 2018) ("Even if the records are filed on the public docket of the *Neighbors* case, we can take judicial notice only of the *filing* of the documents, and not of the truth of the documents' contents."). Additionally, courts "may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed." *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Even if the Court were to consider the document referenced in a web link in the First Amended Complaint (*see* FAC, n. 3) under the incorporation by reference doctrine, the motion to dismiss should still be denied because inclusion of the name "Experian Marketing Services" in the document does not definitively show that the wrong party has been named. That disputed issue should be reserved for a motion for summary judgment after discovery. Most importantly, it is plausible that "Experian Marketing Services" is merely the entity that markets the Mosiac score to potential customers while Experian Information Solutions, Inc. actually offers that product and is responsible for it. The web link in the FAC directs to an online document naming "Experian Information Solutions, Inc." and refers to the Mosaic score as its property:

**2018 Experian Information Solutions, Inc. All rights reserved**

Experian and the Experian marks used herein are trademarks or registered trademarks of Experian Information Solutions, Inc.

Other product and company names mentioned herein are the property of their respective owners.

Tesla's Request for Judicial Notice, Exhibit A [Dkt. No. 65-2], at page 3.

This is not a case where it is clear as matter of law that the wrong party has been named as a defendant like in *Miller v. Oceanside Police Dep't*, No. 09 CV 2265 JM (BLM), 2009 U.S.

**1**   Dist. LEXIS 115336, at *4 (S.D. Cal. Dec. 10, 2009). There that Court held on a motion to

**2**   dismiss that a claim for purposes of 18 U.S.C. § 983 (civil forfeiture) could only be brought

**3**   against the United States as opposed to the Oceanside Police Department (the named

**4**   defendant). *Id.*

**5**   The *Steinmetz* decision cited by Experian does not support dismissal of this action

**6**   against Experian.  First, the *Steinmetz* Court improperly considered an online brochure, looking

**7**   to a web link cited in the amended complaint, as apparently dispositive on the question of

**8**   whether it was Experian Information Solutions, Inc. or Experian Marketing Services, Inc. that

**9**   offered certain credit products at issue in that action. *Steinmetz v. Am. Honda Fin.*, No. 2:19-

**10**   CV-64 JCM (VCF), 2019 U.S. Dist. LEXIS 157379, at *20 (D.Nev. Sep. 16, 2019). However, a

**11**   Rule 12(b)(6) motion tests the sufficiency of the pleadings and does not look to outside

**12**   evidence, as explained above. Essentially, Experian is not permitted to challenge the factual

**13**   allegations on the present motion under Rule 12(b)(6) that Experian is the responsible entity

**14**   whose product is the Mosaic score, as that is reserved for a motion for summary judgment. *See*

**15**   *generally, Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ("A motion to dismiss

**16**   under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can

**17**   be granted 'tests the legal sufficiency of a claim.'").

**18**   Second, the paragraph of the *Steinmetz* decision Experian references in the present case

**19**   indicated that the amended complaint was dismissed because the plaintiff did "not allege that

**20**   any of these products are credit products regulated by the FCRA, let alone that they are either

**21**   consumer reports or consumer disclosures subject to either §§ 1681e or 1681g." *Steinmetz,* No.

**22**   2019 U.S. Dist. LEXIS 157379, at *20. Plaintiff's FAC here expressly alleges that Experian

**23**   (the currently named Defendant) is the responsible entity that offers the Mosaic score. *See* FAC,

**24**   ¶¶ 3, 30, 56, 62, 79, 86, 87, 88, ad 89. The FAC thus plausibly alleges facts sufficient to "state a

**25**   claim to relief that is plausible on its face" (*Iqbal*, 556 U.S. at 678 (citation omitted)) against

**26**   Experian Information Solutions, Inc., which is all that is required at the pleadings stage.

**27**   The decision in *Kinder v. Harrah's Entm't, Inc.*, No. 07CV2226, 2008 U.S. Dist. LEXIS

**28**   132290, at *4 (S.D. Cal. Jan. 22, 2008) in instructive.  There, the defendant brought a Rule

**1**    12(b)(6) motion to dismiss contending that the plaintiff named the wrong party to the action.  In

**2**    denying the motion to dismiss, the Court stated, "In ruling on a motion to dismiss, the Court

**3**    may not weigh evidence, and instead must take all allegations as true. Plaintiff properly alleged

**4**    Defendant made the phone calls at issue. Accordingly, Defendant's motion to dismiss on

**5**    grounds that Plaintiff named the wrong Defendant is denied."). *Id*. at *4.

**6**         Therefore, the motion to dismiss based on Experian's argument that it was incorrectly

**7**    named as a party defendant should be denied.

**8**    **V.     THE MOTION TO DISMISS THE FCRA CLAIM SHOULD BE DENIED**

**9**         **A.     Plaintiff has Adequately Plead a Claim Under the FCRA**

**10**        Congress established the Fair Credit Reporting Act in 1970 to protect consumer privacy,

**11**   among other things. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed.

**12**   2d 1045 (2007). The lead Senate sponsor, William Proxmire, in his opening statement when he

**13**   chaired the hearings on the bill that would become the FCRA, stated:

**14**            The aim of the Fair Credit Reporting Act is to see that the credit
             reporting system serves the consumer as well as the industry. The
**15**            consumer . . . has a right to see that the information is kept
             confidential and is used for the purpose for which it is collected;
**16**            and he has a right to be free from unwarranted invasions of his
             personal privacy. The Fair Credit Reporting Act seeks to secure
**17**            these rights.

**18**

**19**   Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking

**20**   and Currency, 91st Cong. 2 (1969). Moreover, Senator Proxmire found, "[t]he growing

**21**   accessibility of this information through computer- and data-transmission techniques makes the

**22**   problem of confidentiality even more important." *Id*.

**23**        More recently, the Ninth Circuit observed that "[t]he modern information age has shined

**24**   a spotlight on information privacy, and on the widespread use of consumer credit reports to

**25**   collect information in violation of consumers' privacy rights." *Syed v. M-I, LLC*, 853 F.3d 492,

**26**   495 (9th Cir. 2017).

**27**        As discussed in detail below, Experian's actions in this case create the exact harm to

**28**   consumer privacy that Congress enacted the FCRA to prevent. Plaintiff has adequately alleged

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

that Experian violated the FCRA when Experian shared specific, confidential consumer data through its Mosaic score, which Experian provided to Tesla so that Tesla could use the consumer data in for an impermissible purpose.

### 1.   Experian's Mosaic Score is a Consumer Report

Pursuant to the FCRA a consumer report is

[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for —
(A) credit or insurance to be used primarily for personal, family, or household purposes;
(B) employment purposes; or
(C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

"[O]ne of the purposes for which disclosure of consumer information is authorized [under section 1681b] is to a person whom the disseminator has reason to believe: (E) otherwise has a legitimate need for the information in connection with a business transaction involving the consumer." *Greenway v. Information Dynamics, Ltd.*, 399 F.Supp. 1092, 1095 (D.Ariz. 1974) (emphasis in original). In determining the scope of the statute, the FCRA is to be liberally construed in favor of consumers. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 95 Cal. Daily Op. Service 477 (9th Cir. 1995).

Therefore, the definition of a consumer report boils down to two main elements (1) did the communication contain the seven characteristics of the consumer; and (2) was it used to establish credit, insurance, employment purposes, or any other legitimate need in connection with a business transaction involving the consumer. Plaintiff has adequately alleged that the Mosaic score is a consumer report when alleging (1) the report is comprised of several of the seven characteristics; and (2) Experian knew and expected subscribers to use the Mosaic to serve as a factor in establishing the consumer's eligibility or for marketing or sales in a business transaction involving the consumer.

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

i.   ***Mosaic score is comprised of at least one of the seven characteristics***

As mentioned above, a consumer report consists of information bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. Here, Plaintiff alleges in the FAC that Experian creates the Mosaic profile based on "property characteristics and summarized credit and automotive data". FAC, ¶ 30. Using this highly personalized information as a starting point, Experian then, "provides a 360-degree view of consumers' choices, preferences and habits." Tesla's Request for Judicial Notice, Exhibit A [Dkt. No. 65-2], at page 3. According to these profiles, Experian will tell third parties, like Tesla, that a consumer is within the category "American Royalty" or "Tough Times". *Id.* at 6-7. This undoubtedly reveals the consumers' credit worthiness, character, general reputation, personal characteristics and mode of living. Therefore, the first element is of a consumer report is satisfied.

ii.   ***Experian knew or expected that the consumer data would be used for establishing credit or in connection with a business transaction involving the consumer***

As to the second element, the Mosaic score constitutes a consumer report because Experian knew, expected, and created the Mosaic score so that it would be used for a purpose under 15 U.S.C. § 1681a(d)(1). The purpose of the information can be gleaned solely from the credit reporting agency itself, independent of how a third party actually used the consumer report. *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273-74 (9th Cir. 1990).

a.   <u>**Experian's Mosaic score is intended to be utilized in connection with a business transaction involving the consumer**</u>

The Ninth Circuit has adopted a broad definition of a consumer report when it affirmed that "[w]hen an agency disseminates information bearing on any of the seven characteristics of a consumer listed in § 1681a(d) to a third party, and the agency knows or expects that it will be used 'in connection with a business transaction involving the consumer,' then that information is a 'consumer report.'" *Greenway v. Information Dynamics, Ltd.*, 399 F.Supp. 1092, 1095 (D.Ariz.

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

1974) aff'd by 524 F.2d 1145, 1146 (9th Cir. 1975); *see also*, Plaintiff's Request for Judicial Notice ("Pl.'s RJN"), Exhibit A (Federal Trade Commission's ("FTC") Staff Report with Summary of Interpretations), p. 23 ("sections [1861a] and [1861b] must be construed together to determine what are "consumer reports"); *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) (narrowing permissible use under "business transaction", but not as it applied to definition of a consumer report).[1]

Plaintiff has sufficiently plead that Experian disseminated the Mosaic score as a tool that could be used by businesses in marketing and sales. FAC ¶ 31, 35. Furthermore, Experian itself advertises that the Mosaic score can focus a business' "resources and increase site performance, maximize sales conversion, *optimize consumer targeting to ensure that the right product offerings are matched to the right audience*." Pl.'s RJN, Exhibit D (Mosaic USA E-Handbook), p. 3 (emphasis added). Moreover, Plaintiff alleges that the Mosaic score is provided regarding each consumer specifically when the business transaction is initiated. FAC ¶ 74.

"Clearly, the expectation is that the information will be used by [Mosaic's subscribers] in connection with a business transaction -- a purchase of goods or services -- between the subscriber and the consumer" therefore, it is a consumer report. *Greenway*, 399 F.Supp. at 1095 (D.Ariz. 1974).

### b.   Experian intended the Mosaic score to be utilized as a factor in establishing credit

Experian makes the blanket claim that a generalized marketing tool can never be a consumer report because it is not used as a factor in establishing credit. Experian's Memo., p. 11, ln. 10. However, this is untrue and goes against the very nature of the FCRA and Federal Trade Commission ("FTC") opinions. "Under [section 1861a(d)], it is not necessary to show that the information communicated by the target marketing lists, standing alone, could be used

[1] Experian tellingly misquotes *Harrington v. ChoicePoint Inc*., by leaving out the more expansive section of 1861a(d), which states "or for one of the other purposes authorized by Section 1681b", of which is "a business transaction involving the consumer,". *Harrington*, No. CV 05-01294 MRP (JWJx), 2006 U.S. Dist. LEXIS 101903, at *25 (C.D. Cal. Oct. 11, 2006). Although some Circuits have removed the business transaction catchall from the definition of a consumer report, this is not the case in the Ninth Circuit.

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

to make a credit-related decision." Pl.'s RJN, Exhibit C (*In re Trans Union Corp*., Final Order, No. 9255 (Feb. 10, 2000)), p. 15, n.18. Instead, courts "need merely determine that the information is used or expected to be used as "a factor" in such a decision." Something serves "as a factor" if it "'contributes to the production of a result.'" *United States v. Wilson*, 896 F.2d 856, 858 n.3 (4th Cir. 1990), citing Webster's 3rd International Dictionary, 1971.

Experian designed the Mosaic score expecting subscribers to not only utilize it to market to consumer, but to also ensure that those being marketed to were eligible for credit. Plaintiff details how the Mosaic score places each consumer into a category based on each individual consumer's "property characteristics and summarized credit and automotive data." FAC ¶ 87, n. 8. In creating the score, Experian utilizes "Summarized Credit Statistics", which "are calculated by aggregating the available consumer credit data within a ZIP+4 geographic area." Pl.'s RJN, Exhibit E, (Experian's Summarized Credit Statistics), at p. 2 & Exhibit D at p. 5. In addition to this data, Experian aggregates a total of 300 data points to create the Mosaic profile of each individual. Tesla's Request for Judicial Notice, Exhibit A [Dkt. No. 65-2], at page 4.

Through the Mosaic score, Experian places consumers in 19 groups with 71 subcategories containing labels such as "Power Elite"; "Full Pockets, Empty Nest"; "Blue Collar Comfort"; and "Tough Times". (RJN Mosaic profile). Utilizing the E-Handbook, Experian provides subscribers with an estimated range of the consumer's household income range, current home's value, and education level. *See e.g.,* Pl.'s RJN, Exhibit D, at pp. 9-10. Also, the Mosaic score explicitly notifies subscribers of what the consumer's credit ability is by placing them into categories. *Id*. The highest credit valued consumers have the key feature of "Established Credit", just below this is "High Credit Awareness", then "Credit Aware", then "Credit Revolver", then "Cash over Credit" and lastly, individuals with poor credit receive the rating of "Cash not Credit". *Id.* at pp. 19, 41, 61, 89, 91, 157, 179. Experian then gives all this detailed information to subscribers so that they may use it to target consumers "for marketing and sales purposes" and act as a factor in establishing credit. FAC ¶¶ 3, 31, 88.

The FTC has found that this exact proprietary model amounted to a consumer report for establishing credit. In the FTC's formal Opinion, the FTC examined Trans Union's proprietary

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

models that it sells to merchants for target marketing. Identical to the Mosaic score, these tools aggregate 313 attributes of each consumer to then "assign a value, or 'score,' to each consumer file." Pl.'s RJN, Exhibit C, p. 9. These scores put consumers into a "cluster" or "bucket", based on the individual's characteristics. *Id*. Each of these subcategories have names such as "The Wealth Market," "Empty Nesters,"; and "Urban Upscale", and each provides information such as the consumer's estimated income, the home value range, and the consumer's behavior and tendencies. *Id*.

In determining that these proprietary models were consumer reports, the FTC put an emphasis on the fact that Trans Union marketed these products as a way for merchants to find "the most eligible and profitable targets for the lenders' promotions." Pl.'s RJN, Exhibit C, p. 28). The FTC found the "P$YCLE" model was intended for establishing credit eligibility because it "allows marketers to segment consumers according to affluence, financial product and service usage, and account balances." *Id*. The FTC also relied on the fact that the contents of the proprietary models were composed of information a creditor would use in establishing credit, such as information "about the consumer's income - - a significant factor "used" in credit eligibility decisions." *Id.* at pp. 28-29.

Experian advertises and expects subscribers to utilize the Mosaic score in the exact same way. One of the sources that the Mosaic score pulls its descriptive content from is Experian's Summarized Credit Statistics, which Experian advertises as "information [that] effectively targets consumers for a diverse range of marketing offers, such as invitations to apply for a credit card, home equity loans or financial advisement services." Pl.'s RJN, Exhibit D at p. 5 & Exhibit E. Not only can Mosaic be used for these purposes, but Experian also advertises it as a tool to, "acquire, manage and develop profitable customer relations . . . maximize sales conversion . . . and identify investment opportunities." Pl.'s RJN, Exhibit D, p. 3. Based on this information, marketers can get "insights needed to anticipate the behavior, attitudes and preferences" of consumers. FAC ¶ 87, n. 8. Lastly, Experian provides the subscriber of the Mosaic score with the consumer's estimated income, age and generalized credit stability, so that the merchant can use this score, at least in part, for establishing the consumer's eligibility for

credit. FAC ¶ 88.

Therefore, the Mosaic score is a consumer report because Experian created the Mosaic score for the purpose of being a factor in establishing credit.

### c.   FTC's opinion is vital to interpreting the FCRA in this case

The FTC is the agency empowered to administer and enforce the FCRA. 15 U.S.C. § 1681s(a). While the commentaries and opinions of the FTC are not law, the Supreme Court has stated that when Congress has not addressed the precise issue raised in a case, "the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984).

Many courts have looked to FTC rulings and opinion letters as being persuasive in similar situations. *Traveler v. Glenn Jones Ford Lincoln Mercury 1987, Inc*., No. CV-05-0817-PHX-SRB, 2006 U.S. Dist. LEXIS 2631, at *11 (D.Ariz. Jan. 24, 2006); *Albu v. Home Depot, Inc.*, No. 1:15-CV-00412-ELR-JFK, 2015 U.S. Dist. LEXIS 177228, at *17 (N.D. Ga. Oct. 26, 2015). Therefore, this FTC opinion is not only persuasive, it is actually vital to deciding the issue at hand.

### iii.   *Experian's case law is distinguishable*

The cases that Experian relies on to support its claim that marketing information cannot be a consumer report are all distinguishable from the facts of the present case.

First, in *Arcidiacono v. Am. Exp. Co.*, the New Jersey District court expressly noted that "The Third Circuit has rejected [the *Greenway* case's] interpretation of the statute". *Arcidiacono*, NO. 92-3428 (JEI), 1993 U.S. Dist. LEXIS 4042, at *8, fn. 3 (D.N.J. Mar. 29, 1993) ("Although § 1681b(3)(E) also mentions 'a business transaction involving the consumer,' the Third Circuit has determined that this expansive language should not be read back into the definition of 'consumer report' in § 1681a(d)"). The Ninth Circuit, however, has affirmed that "[w]hen these two sections of the Act, § 1681a(d) and § 1681b(3)(E), are read together, ***as the***

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

*Act indicates they must be*, the result is clear: When an agency disseminates information bearing on any of the seven characteristics of a consumer listed in § 1681a(d) to a third party, and the agency knows or expects that it will be used 'in connection with a business transaction involving the consumer,' then that information is a 'consumer report.'" *Greenway,* 399 F.Supp. at 1095 (D.Ariz. 1974) aff'd, 524 F.2d 1145 (9th Cir. 1975) (emphasis added).

The plaintiff in *Arcidiacono* expressly plead that the credit reporting agency and the merchants purchasing the reports never intended to use nor actually used the reports to issue credit; and the reports in *Arcidiacono **only*** provided generalized labels such as "fashion conscious" or "Fifth Avenue sophisticated". *Arcidiacono*, 1993 U.S. Dist. LEXIS 4042, at \*2-3, \*11, fn. 5.  Contrarily, Experian here provided more detailed information about its consumers that are significant factors in establishing credit. *See e.g.* Pl.'s RJN, Exhibit D (provides consumer's estimated income, property value, age, and credit quality). Because of the individual specific credit information that Experian provides, Plaintiff adequately alleges that Experian intended for this information to be used for establishing credit. FAC ¶ 3, 31, 88.

Lastly, Experian's reliance on *Johnson v. Wells Fargo Home Mortg., Inc*., is unfounded as that court's decision was based on the fact that the ***plaintiff's*** use was for business, commercial, or professional purposes, not the third party the consumer reporting agency shares the information with. *Johnson*, 558 F.Supp.2d 1114, 1127 (D.Nev. 2008) ("the court reiterates its prior decision that Plaintiff's business and commercial transactions are not subject to the FCRA"). However, here Plaintiff claims that Experian is sharing Plaintiff's information in the purchase of a car for his own personal use, thus fitting the definition of a consumer transaction. FAC ¶ 86.

### 2.  Experian Provided the Consumer Reports Knowing the Report was Being Used in An Impermissible Way

Experian claims that it had reason to believe that the consumer report was being used for a permissible purpose and, consequently, it was not required to obtain Plaintiff's consent before issuing the report. Experian's Mtn. p. 12. This is an incorrect statement of law.

//

//

### i.   *Experian's consumer report was impermissibly used*

Decisions that have addressed facts similar to this case teach that a permissible purpose under 15 U.S.C. § 1681b(a)(3)(A) or 15 U.S.C. § 1681b(a)(3)(F)(i) cannot, as a matter of law, be established where the defendant obtained a consumer report without consent in response to mere comparison-shopping behavior. *See Boone v. T-Mobile USA Inc.,* No. 17-378-KM-MAH, 2018 U.S. Dist. LEXIS 14951, at *34 (D.N.J. Jan. 26, 2018) (plaintiff's "general inquiry about the availability of cell phone plans" is insufficient to establish business transaction); *Traveler*, cv-05-0817, 2006 U.S. Dist. LEXIS 2631 at *1, 3-5 (insufficient business transaction when plaintiff visited car dealership looking for car, asked about available vehicles within Capital One's price limit, and informed the dealership that plaintiff was going to continue looking for a vehicle); *Qureshi v. Penkhus Motor Co*., 15-cv-2337, 2016 U.S. Dist. LEXIS 133431, 2016 WL 5372184, at *1-3 (D. Colo. Sept. 26, 2016); *Heaton v. Soc. Fin., Inc*., 14-cv-5191, 2015 U.S. Dist. LEXIS 141306, 2015 WL 6744525, at *4-5 (N.D. Cal. Nov. 4, 2015).

Here, Plaintiff alleges that Tesla pulled Plaintiff's consumer report when Plaintiff merely requested a test drive. FAC ¶ 19-21. However, "[i]n the absence of written permission, an automobile dealer may obtain a credit report 'only in circumstances where it is clear *both* to the consumer and to the dealer that the consumer is *actually initiating the purchase* . . . a specific vehicle." *Qureshi*, Civil Action No. 15-cv-02337-NYW, 2016 U.S. Dist. LEXIS 133431, at *8 (citation omitted) (emphasis added).

This is the FTC interpretation of the FCRA as well. As the FTC explained, it is unlawful for a car salesperson to pull a consumer report on an individual at the test drive stage, unless that individual has provided express written consent. *See* Pl.'s RJN, Exhibit B (FTC Informal Staff Letter), p. 2. When examining the permissible purpose under 15 U.S.C. § 1681b(a)(3)(F) (legitimate business need in connection with consumer transaction), the FTC limits this "business need" permissible purpose to transactions (i) that are "initiated" by the consumer and (ii) where the seller has a "legitimate business need" for the information. *Id.* Consequently, "an automobile dealer may obtain a report *only* in those circumstances in which the consumer clearly

1    understands that he or she is initiating the purchase or lease of a vehicle and the seller has a

2    legitimate business need for the consumer report information in order to complete the

3    transaction." *Id*. The FTC explains that when the consumer is merely comparison shopping or

4    test driving the vehicle, this does not necessarily show an intent to purchase. *Id*. Therefore, "if a

5    consumer asks to test drive a vehicle, the dealer must obtain written permission from the

6    consumer before obtaining a report." *Id*.

7        The FTC has doubled down on this position in 2011. *See* Pl.'s RJN, Exhibit A, at p. 14 (it

8    is impermissible for "salesperson to obtain a report on 'window shoppers' for bargaining

9    purposes, deciding whether to spend time with consumers, or to respond to general questions

10   about available products or financing.") As the Ninth Circuit affirmed, "information on a

11   particular consumer may only be provided to a third party who requires it in connection with a

12   ***specific transaction*** between that party and that particular consumer." *Greenway*, 399 F. Supp.

13   1092, 1096 (D. Ariz. 1974), aff'd, 524 F.2d 1145 (9th Cir. 1975). Importantly, there can be no

14   specific transaction at the test drive phase, as the consumer has not even chosen which vehicle

15   they would like to purchase, if purchase a vehicle at all.

16       The cases Experian relies on to assert the legal conclusion that consent is not required

17   are not persuasive. First, Experian's reliance on *Rosco v. Experian Info. Sols*. is unpersuasive

18   because Rosco was determined at the summary judgment stage, and the quote Experian relies

19   on is dicta. *See Rosco,* No. 2:15-CV-325-RMP, 2017 U.S. Dist. LEXIS 201865, at *19 (E.D.

20   Wash. Dec. 7, 2017). Moreover, the plaintiffs in *Rosco* were *pro se* plaintiffs that "fail[ed] to

21   identify any specific third parties that viewed Experian credit reports for Plaintiffs" or "identify

22   any specific impermissible purpose for which Experian allegedly furnished a report." *Id.* at

23   *20. However, Plaintiff states who the third party is and what the impermissible purpose was.

24   FAC, ¶ 92.

25       In *Jones v. Best Serv. Co.,* again a *pro se* plaintiff never alleged an impermissible

26   purpose, but instead only alleged that Defendant pulled the report solely for the permissible

27   purpose of collecting a debt from plaintiff. *Jones,* No. CV 14-9872 SS, 2017 U.S. Dist. LEXIS

28   16456, at *20 (C.D. Cal. Feb. 6, 2017). Similarly, with *Stergiopoulos*, the lower court's

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

reasoning that consumer consent was not required was narrowly upheld by the 7th Circuit on appeal. *Stergiopoulos v. First Midwest Bancorp, Inc*., 427 F.3d 1043, 1047 (7th Cir. 2005). The 7th Circuit explained that a user of consumer report "may rely on [1861b(a)(3)(A) ***only if*** the consumer initiates the transaction . . . there must be a direct link between a consumer's search for credit and the [third party]'s credit report request." *Id.* However, as explained above, the FTC and courts around the nation have found, as a matter of law, that a consumer does not "initiate a transaction" in the context of comparison shopping. Thus, the facts of *Stergiopoulos* are distinguishable in legally determinable manner.

Therefore, for Tesla to obtain Plaintiff's consumer report without Plaintiff's consent constitutes an impermissible use of a consumer in violation of the FCRA.

### ii. *Even if a permissible purpose existed, this does not provide consent for an impermissible purpose*

Experian claims that, "so long as Experian had reasonable grounds for believing that Tesla would use the Mosaic score for a permissible purpose," Experian did not violate the FCRA. Experian's Mtn. at 13, lns. 20-21. Experian seems to take the position that since it believed Tesla was going to use Plaintiff's consumer report for one permissible purpose (establishment of credit), it was permitted to turn a blind eye towards any impermissible uses. This is incorrect.

First, the establishment of one permissible purpose does not allow a third party to utilize a consumer report for an impermissible purpose. *Lukens v. Dunphy Nissan, Inc.*, 2004 U.S. Dist. LEXIS 14528, at *8, fn. 2. (E.D. Pa. July 26, 2004) ("§ 1681b(f) may also prohibit the impermissible use of a credit report that was initially obtained for a permissible purpose"); *Rodriguez v. Your First Choice, LLC*, No. 2:16-cv-02447-APG-CWH, 2017 U.S. Dist. LEXIS 177368, at *10-11 (D.Nev. Oct. 25, 2017) ("It is not clear that consent to a credit pull for a permissible purpose (such as the extension of credit) also authorizes a credit pull for a statutorily impermissible purpose.")

Second, Experian can be liable for the Tesla's impermissible use when the Experian fails to comply with the statutory obligations imposed by 15 U.S.C. § 1681e. *See Guimond*, 45 F.3d

at 1333 (9th Cir. 1995). Under 15 U.S.C. § 1681e, Experian shall make a reasonable effort to verify that the uses certified by such prospective user is a purpose listed under section 1681b prior to furnishing such user a consumer report. Experian is required to do more than merely, "accept a subscriber's general promise to obey the law; instead, [Experian] may not furnish reports if 'reasonable grounds' exist to believe that reports will be used impermissibly." *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106, 1114-1115 (9th Cir. 2009).

Experian claims that it had reasonable belief that Tesla was using the reports for the permissible purpose of establishing credit. But, as the FTC has explained, at the test drive stage, Tesla's use of consumer's reports to determine credit eligibility was impermissible without the consumer's consent. *Qureshi*, 2016 U.S. Dist. LEXIS 133431, at *8. Therefore, assuming Experian knew that it was being used for establishing consumer credit, Experian had the duty to ensure that consumer's consent existed at the time of providing the report.

The facts here are similar to *Levine*, where Experian provided a creditor with the credit report of the consumer because the creditor stated to Experian that credit report was for "account review" purposes, despite the fact that the consumer had paid off and closed the account years prior. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). Experian argued that its requirement of safeguarding consumer data, "extends only so far as a former creditor's facially valid request for a credit report." *Id*. at 1121. The 11th Circuit rejected this position on the basis that when there was the ***reasonable indicator*** that the request was for other purposes (i.e. the account was closed), Experian cannot rely on a simple recitation of the alleged permissible purpose of "account review". *Id*. at 1122. Due to this, this issue "is a fact intensive one that is not resolved by the pleadings." *Id*.

Similarly, Plaintiff alleges that Tesla provided Experian with the simple recitation that the consumer report was going to be used for establishing consumer's eligibility for credit. FAC ¶¶ 3, 87, 88. Experian provided the consumer report to Tesla instantaneous to Tesla swiping Plaintiff's driver's license before Plaintiff even test drove the car. FAC ¶¶ 25-30. As a consequence, Tesla could not have provided Experian with any kind of supporting documents (i.e. purchase agreement, credit application, written consent) to allow Experian to certify Tesla's

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

1 alleged purpose was in fact true. Thus, Experian provided the consumer report despite knowing

2 that Tesla had obtained the information from the consumer's driver's license at the test drive

3 phase without the consumer consent. FAC ¶¶ 30, 56-57, 62-63, 77.

4      Identical to the creditor asking for plaintiff's consumer report after the account was paid

5 off, this lack of supporting documentation was a reasonable indicator that Tesla was using the

6 consumer report in response to comparison-shopping, which is an impermissible purpose.

7 Another important red flag is that Experian received consumer information from a driver's

8 license, instead of a consent form to pull credit. Thus, Experian did not make a reasonable effort

9 to verify the use, but instead provided a consumer report in spite of reasonable indicators that it

10 would be used for an impermissible purpose.

11      Experian's attempt to paint Tesla as having a "reason to believe" it had a permissible

12 purpose improperly contradicts the allegations within the First Amended Complaint. FAC ¶ 92.

13 Moreover, "it is important to note that the 'reason to believe' standard does not save a defendant

14 from ambiguity in the law (e.g., what conduct legally constitutes a . . . "business transaction that

15 is initiated by the consumer"). *Miller v. Dish Network, L.L.C.*, 326 F. Supp. 3d 51, 65-66

16 (E.D.Va. 2018) citing 15 U.S.C. § 1681b(a)(3). Therefore, Plaintiff's allegation that Tesla

17 impermissibly used the report at the test drive phase trumps any other purpose Tesla may have

18 had a reason to believe it was permissibly using the report for.

19      The case law Experian relies on is distinguishable. The *Korotki* Court issued that

20 decision in 1996, under a previous version of the FCRA that did not provide any guidance for

21 when a "person" could obtain a consumer report and addressed only when a consumer reporting

22 agency could furnish a report. *Korotki v. Attorney Servs. Corp.*, 931 F.Supp. 1269, 1275 (D.Md.

23 1996) ("Section 1681b appears to impose requirements only on consumer reporting agencies.").

24 Unlike this Court, the *Korotki* court could not resort to the statutory language in section

25 1861b(f) because 1861b(f) did not yet exist. Yet, the 4th Circuit affirmed the lower court's

26 ruling because it found two permissible purposes existed and plaintiff "has made no showing

27 that the report was obtained for an impermissible purpose." *Korotki v. Thomas, Ronald &*

28 *Cooper, P.A.,* No. 96-1877, 1997 U.S. App. LEXIS 34157, at *6 (4th Cir. Dec. 5, 1997).

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

However, Plaintiff here has adequately alleged that Tesla used the consumer report for an impermissible purpose that cannot be excused by an alleged permissible purpose.

Similarly, *Huertas v. Citigroup, Inc*., is factually distinguishable because the plaintiff in that case "responded to two offers for a credit card from Citigroup because he was convinced that the offers were Firm Offers and thus they would be honored." *Huertas*, No. 13-2050 (RMB/JS), 2014 U.S. Dist. LEXIS 117348, at *8 (D.N.J. Aug. 21, 2014). As described above, Plaintiff in this case did nothing more than comparison-shop, which under the FCRA does not create a sufficient business transaction for Tesla to have the authority to access Plaintiff's consumer report.

In conclusion, Plaintiff has alleged sufficient facts to show Experian had reasonable grounds to believe it was going to be used for an impermissible purpose or had taken unreasonable efforts to validate the request, in violation of the FCRA.

### iii. *Even though the report is used for an unauthorized purpose, it still meets the definition of a consumer report*

Experian may argue in its reply brief that because Plaintiff alleges that the report was created for a permissible purpose, but then not used for an impermissible purpose that this creates a contradictory argument in regards to the definition of a consumer report. That is not so. Because the information is expected to be used or is collected in whole or in part for the purpose of (assisting evaluation of) the consumer's eligibility for credit (or other authorized purpose), the overwhelming weight of authority is that such a report is a 'consumer report,' *regardless of the unauthorized purpose to which the information may in fact be used by the party procuring the report*. *Comeaux*, 915 F.2d at 1273-74 (9th Cir. 1990); *Yang v. Government Employees Ins. Co.*, 146 F.3d 1320, 1325 (11th Cir. 1998).

In other words, Experian generally developed the Mosaic score to be a factor in establishing credit (15 U.S.C. § 1681a(d)(1)(A)) and to be used for a legitimate need for the information in connection with a business transaction involving the consumer (15 U.S.C. § 1681b(a)(3)(F)), thus making it a consumer report. However, after its inception, Experian provided the report to Tesla knowing that this consumer report was going to be used for an

impermissible purpose. Thus, Experian provided a consumer report in violation of the FCRA.

### 3.   Plaintiff sufficiently alleged that Experian's Violation was Willful

The question of willfulness is one for the trier of fact, and hence a difficult one to handicap. *Acosta v. Trans Union, LLC*, 240 F.R.D. 564 (C.D. Ca. 2007). "[R]eckless disregard of a requirement of FCRA would qualify as a willful violation . . ." *Safeco Insurance Co. of America*, 551 U.S. at 71 (2007). A violation of FCRA is reckless if "the company ran a risk of violating the law substantially greater than the risk associated with a reading [of the statute] that was merely careless." *Id.* at 69.

Experian argues that Plaintiff has not sufficiently alleged that Experian's behavior in this case was not willful or reckless because Plaintiff cannot "point to any 'guidance from the courts of appeals or the [FTC] that might have warned' Experian that furnishing Tesla with a Mosaic score raised an 'unjustifiably high risk' of violating the FCRA." Experian's Mtn at 15, lns. 11-14. Not so.

As Plaintiff has pointed out in this brief, the FTC wrote an opinion letter in 1998, which stated that automobile dealer's use of the consumer report at the test drive phase is an impermissible use of a consumer report. Pl.'s RJN, Exhibit B. In 2000 and 2011, the FTC released two separate opinions in which it stated that reports identical to the Mosaic score constitute consumer reports. *See* Pl.'s RJN, Exhibit A & C. Moreover, the FTC's 2000 order was upheld by the D.C. Circuit Court of Appeals. *See Trans Union Corp. v. FTC,* 345 U.S. App. D.C. 301, 245 F.3d 809 (2001).

The First Amended Complaint details how Experian provided the consumer report despite knowing that Tesla had obtained the information from the consumer's driver's license without the consumer consent. FAC ¶¶ 30, 56-57, 62-63, 77. Despite these substantial warning signs and notice that Experian's Mosaic score was a consumer report and that Tesla's use of this report was for an impermissible purpose, Experian still provided the consumer report to Tesla for an impermissible purpose.

Therefore, Plaintiff has sufficient alleged that Experian acted willfully through it reckless disregard of the requirements of the FCRA.

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

//

### B.   Electronic Communication Protection Act

Although Plaintiff believes he has sufficiently alleged facts to support a cause of action under the Electronic Communication Protection Act, at this time Plaintiff does not oppose dismissal *without* prejudice of that cause of action asserted against Experian.  Plaintiff reserves the right to amend the FAC to reassert such cause of action against Experian should discovery reveal evidence to further support this cause of action.

### C.   Driver's Privacy Protection Act

In light of recent controlling authority, Plaintiff does not oppose dismissal *without* prejudice of the cause of action under the Driver's Privacy Protection Act.

## VI.   CONCLUSION

In conclusion, Plaintiff respectfully requests that this Court deny Experian's motion to dismiss as to the "wrong party" argument and the challenge to the FCRA claim. Should the Court find that the allegations in the FAC are not sufficiently pled, Plaintiff respectfully requests leave to amend consistent with the policy of favoring amendment that is to be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Similarly, should the Court find that Experian is not the proper Experian entity, Plaintiff requests leave to amend to add Experian Marketing Services, Inc. as a named party defendant, particularly when Experian did not move to dismiss based on naming a "wrong party" in its initial motion to dismiss.

Date: January 3, 2020                      **KAZEROUNI LAW GROUP, APC**

                                          By:  */s/ Abbas Kazerounian*
                                               Abbas Kazerounian, Esq.
                                               *Attorneys for Plaintiff*

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808

1  Facsimile: (800) 520-5523
   Attorney for Plaintiff

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Kazerouni Law Group, APC, 245 Fischer Avenue, Suite D1, Costa Mesa, California 92626. On January 3, 2020, I served the within document(s):

**PLAINTIFF'S OPPOSITION TO DEFENDANT EXPERIAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

☒      CM/ECF - by transmitting electronically the document(s) listed above to the electronic case filing system on this date before 11:59 p.m. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct, executed on January 3, 2020.

_/s/ Abbas Kazerounian____
ABBAS KAZEROUNIAN

*Kazerouni Law Group, APC*
Costa Mesa, California

PROOF OF SERVICE