**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Nicholas Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*

**UNITED STATE DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WAYNE SKILES, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TESLA, INC., and EXPERIAN INFORMATION SOLUTIONS, INC.,**<br><br>**Defendants.** | **Case No.: 3:17-cv-05434-WHO**<br><br>**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT TESLA, INC.'S MOTION DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Judge:** Hon. William H. Orrick<br>**Ctrm:** 2, 17th Floor<br>**Date:** February 19, 2020<br>**Time:** 2:00 p.m. |

## I.   INTRODUCTION

Plaintiff WAYNE SKILES ("Plaintiff" or "Mr. Skiles") files this Supplemental Opposition to the arguments Plaintiff raised in his original Opposition (ECF Dkt. 70) to defendant TESLA, INC.'s ("Defendant" or "Tesla") Motion to Dismiss (ECF Dkt. 64).[1] Based on all of the arguments raised in Plaintiff's briefing, Plaintiff respectfully request that Tesla's motion to dismiss be denied, expect that Plaintiff does not oppose dismissal without prejudice of the claim under the Driver's Privacy Protection Act.

## II.   PLAINTIFF HAS ADEQUATELY ALLEGED A CLAIM UNDER FCRA

Congress established the Fair Credit Reporting Act in 1970 to protect consumer privacy, among other things. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).  The lead Senate sponsor, William Proxmire, in his opening statement when he chaired the hearings on the bill that would become the FCRA, stated that, "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry.  The consumer . . . has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy.  The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969) (emphasis added).  Moreover, Senator Proxmire found "The growing accessibility of this information through computer- and data-transmission techniques makes the problem of confidentiality even more important." *Id*.

More recently, the Ninth Circuit observed that "[t]he modern information age has shined a spotlight on information privacy, and on the widespread use of consumer credit reports to collect information in violation of consumers' privacy rights." *Syed v. M-I, LLC*, 853 F.3d 492, 495 (9th Cir. 2017).

Tesla argues that its motion to dismiss should be granted because: (1) the Mosaic score is a not a consumer report; and (2) the Mosaic score doesn't convey individualized consumer

[1] This supplemental briefing is permitted by Court Order. Dkt. No. 98.

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

1    information. This is incorrect for the reasons explained below and in the original opposition

2    brief.

3         **A.**     **The Mosaic score is A Consumer Report**

4         Pursuant to the FCRA a consumer report is

5         [A]ny written, oral, or other communication of any information by a consumer

6         reporting agency bearing on a consumer's credit worthiness, credit standing, credit

     capacity, character, general reputation, personal characteristics, or mode of living

7         which is used or expected to be used or collected in whole or in part for the

8         purpose of serving as a factor in establishing the consumer's eligibility for —

          (A) credit or insurance to be used primarily for personal, family, or

9              household purposes;

10             (B) employment purposes; or

          (C) any other purpose authorized under section 1681b of this title.

11

12   15 U.S.C. § 1681a(d)(1).

13        "[O]ne of the purposes for which disclosure of consumer information is authorized

14   [under section 1681b] is to a person whom the disseminator has reason to believe: (E) otherwise

15   has a legitimate need for the information in connection with a business transaction involving the

16   consumer." *Greenway v. Information Dynamics, Ltd*., 399 F.Supp. 1092, 1095 (D.Ariz. 1974)

17   (emphasis in original). In determining the scope of the statute, the FCRA is to be liberally

18   construed in favor of consumers. *Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 95

19   Cal. Daily Op. Service 477 (9th Cir. 1995).

20        The Mosaic score is a consumer report because: (1) Tesla used the Mosaic score 15

21   U.S.C. § 1681a(d)(1); (2) Experian generally expected the Mosaic score to be used as a factor

22   for establishing credit and other business transactions; and (3) Experian collected the

23   information in the Mosaic scores expecting it to be used for establishing credit.

24        **1.**     **Tesla used the Mosaic score for a Purpose Under Section 1861a(d)**

25        Plaintiff alleges sufficient facts to demonstrate the Tesla not only utilized the Mosaic

26   score as a factor in establishing credit, but also for a legitimate need for the information in

27   connection with a business transaction involving the consumer.

28   ///

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

1

i.       *Tesla used the Mosaic score as a factor in establishing credit*

2     "Under [section 1861a(d)], it is not necessary to show that the information

3  communicated by the target marketing lists, standing alone, could be used to make a credit-

4  related decision." RJN FTC Trans Union, p. 15, n.18.  Instead, courts "need merely determine

5  that the information is used or expected to be used as 'a factor' in such a decision." Something

6  serves "as a factor" if it "'contributes to the production of a result.'" *United States v. Wilson*,

7  896 F.2d 856, 858 n.3 (4th Cir. 1990), citing Webster's 3rd International Dictionary, 1971.

8     The Mosaic score provides Tesla with detailed information about the consumer, such as

9  the approximate income of the individual and the individual's age. FAC ¶ 30, 62.  Both of these

10  are factors lenders use in establishing credit. Plaintiff's Request for Judicial Notice ("Pl.'s

11  RJN"), Exhibit A (Federal Trade Commission's ("FTC") Staff Report with Summary of

12  Interpretations), ("lenders use age as a credit factor and age bears on credit capacity" and

13  "consumer's income - - a significant factor "used" in credit eligibility decisions.")  The Mosaic

14  score explicitly notified Tesla what the consumer's credit stability is. *See* Pl.'s RJN, Exhibit D

15  (Mosaic USA E-Handbook). The Mosaic score places individuals into three credit categories

16  based on the individuals credit security. The highest credit valued consumers have the key

17  feature of "Established Credit", just below this is "High Credit Awareness", then "Credit

18  Aware", then "Credit Revolver", then "Cash over Credit" and lastly, individuals with poor

19  credit receive the rating of "Cash not Credit". *See* Pl.'s RJN, Exhibit D at p. 18, 40, 60.

20     Plaintiff alleges that Tesla requested this detailed credit information at the test drive

21  phase of the business transaction so that Tesla could vet which consumers it wanted to pursue

22  based on whether the consumer was likely going to be able to finance the vehicle.  FAC ¶¶ 31,

23  35. Such sales purposes contribute to the production of the result of a consumer eventually

24  buying and financing a Tesla vehicle.

25     Examining these facts in the light most favorable to the Plaintiff, there is at least a

26  reasonable inference can be drawn that Tesla utilized the Mosaic score as a factor in

27  establishing credit.

28  ///

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

### ii.    *Tesla used the Mosaic score for marketing*

The Ninth Circuit affirmed that when "information bearing on any of the seven characteristics of a consumer listed in § 1681a(d) [is] used 'in connection with a business transaction involving the consumer,' then that information is a 'consumer report.'" *Greenway v. Information Dynamics, Ltd*., 399 F.Supp. 1092, 1095 (D.Ariz. 1974) aff'd by 524 F.2d 1145, 1146 (9th Cir. 1975); *see also*, Pl.'s RJN, Exhibit A at p. 23 ("sections [1861a] and [1861b] must be construed together to determine what are 'consumer reports'").

In addition to utilizing the Mosaic score for establishing credit, Tesla also used the information from the Mosaic score for marketing purposes. FAC ¶ 3. Tesla created an individualized profile in its customer relations database for Plaintiff, which included the details from his Mosaic score. *Id*. at ¶ 35. There is an obvious advantage for a car dealer to know before the consumer even test drives a car, whether or not that consumer has the financial ability to purchase the vehicle. Furthermore, as in the case of Plaintiff, if the car dealer knows that the consumer is a wealthier individual, the car dealer will focus its attention and marketing resources on that more valued customer. This is exactly what the Mosaic score was created for, as Experian advertises it as being a tool to focus a business' "resources and increase site performance, maximize sales conversion, *optimize consumer targeting to ensure that the right product offerings are matched to the right audience*." Pl.'s RJN, Exhibit D, at p. 3 (emphasis added).

Although Tesla utilized the Mosaic score for legitimate business need, Tesla did so without consumer consent in violation of the FCRA. FAC ¶ 89; *see* FTC letter (""if a consumer asks to test drive a vehicle, the dealer must obtain written permission from the consumer before obtaining a report"); *see also*, Pl.'s RJN, Exhibit A, at p. 14.

Therefore, Tesla used Plaintiff's consumer information from the Mosaic score for the legitimate need of marketing, making the Mosaic score a consumer report.

### 2.    <u>Experian Created the Mosaic to be Used for Establishing Credit</u>

As detailed in Plaintiff opposition to Experian's brief, Experian created the Mosaic score for the purpose of subscriber's being able to target market their consumers, as well as a tool in

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

establishing credit.

In determining whether a credit reporting agency expected consumer data be used for establishing credit, courts should look to two factors: (1) what the report communicates and (2) how the credit reporting agency advertised reports. Pl.'s RJN, Exhibit C (*In re Trans Union Corp.*, Final Order, No. 9255 (Feb. 10, 2000), p. 28-29).

First, if a consumer report is communicating information that lender's use to determine credit eligibility, then this weighs heavily in favor of finding that the report is expected to be used in establishing credit.  As mentioned above, the Mosaic score conveys consumer's age and income, which are significant factors that lender's use to determine credit eligibility. Pl.'s RJN, Exhibit C, at p. 16 & 28-29 ("lenders use age as a credit factor and age bears on credit capacity" and "consumer's income - - a significant factor "used" in credit eligibility decisions.") Most important, Experian disclosed the consumer's credit quality in the Mosaic score through key features like "Cash not Credit" or "Established Credit". Pl.'s RJN, Exhibit D at p. 131 & 169. Experian's inclusion of data points that are a significant factor in establishing credit demonstrates Experian's expectation that the Mosaic score was going to be utilized in establishing credit.

Second, if the credit reporting agency advertises the report as being a tool to establish credit or to lending, then this weighs in favor of finding it is a consumer report. One of the sources that the Mosaic score pulls its descriptive content from is Experian's Summarized Credit Statistics, which Experian advertises as "information [that] effectively targets consumers for a diverse range of marketing offers, such as invitations to apply for a credit card, home equity loans or financial advisement services." Pl.'s RJN, Exhibit D at p. 5 & Exhibit E, (Experian's Summarized Credit Statistics), at p. 2. Experian also advertises the Mosaic score itself as being a tool to, "acquire, manage and develop profitable customer relations . . . maximize sales conversion . . . and identify investment opportunities." Pl.'s RJN, Exhibit D, p. 3. Based on this information, marketers can get "insights needed to anticipate the behavior, attitudes and preferences" of consumers. FAC ¶ 87, n. 8.  Such language conveys to subscribers that the information can be used to shift through consumers to find those that are eligible for

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

extensions of credit.

Tesla's attempt to introduce a 2012 customer FAQ from Experian is not only improper, but not convincing. The pleading stage is not the place to resolve factual disputes, but to examine the plausibility of the allegations based on the factual allegations within the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ("A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"); *Kinder v. Harrah's Entm't, Inc*., No. 07CV2226, 2008 U.S. Dist. LEXIS 132290, at *4 (S.D. Cal. Jan. 22, 2008) ("In ruling on a motion to dismiss, the Court may not weigh evidence, and instead must take all allegations as true.") Thus, the weighing of conflicting evidence is not proper at this stage. In other words, Tesla cannot use a request for judicial notice in an effort to contradict specific factual allegations (FAC, ¶¶ 30, 56-57, 62-63, 77) on the present motion to dismiss. Furthermore, Experian's response to a specific question in the deep recesses of its website hardly demonstrates the full extent of how Experian publicly advertising its Mosaic product to potential subscribers or what can be inferred from the contents of the Mosaic score itself.

Additionally, judicial notice of matters of public record is limited to the existence and authenticity of a document; the veracity and validity of the contents remain open to dispute. *Bernardi v. JPMorgan Chase Bank, NA*., No. C-11-04543 RMW, 2012 U.S. Dist. LEXIS 1951, 2012 WL 33894, *1 n. 1 (N.D. Cal., Jan. 6, 2012). *See also*, *Hornish v. King Cty.*, 899 F.3d 680, 703 (9th Cir. 2018) ("Even if the records are filed on the public docket of the *Neighbors* case, we can take judicial notice only of the *filing* of the documents, and not of the truth of the documents' contents."). Courts "may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed." *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Therefore, because both factors weigh in favor of finding that Experian expected and collected the data within the Mosaic score for the purpose of establishing credit, Plaintiff has sufficiently alleged facts to show the Mosaic score was expected to be used for credit eligibility.

///

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

3.     **Tesla's Case Law is Unpersuasive**

Tesla relies on two cases to support its contention that Plaintiff has not adequately alleged the Mosaic score is a consumer report. However, both are distinguishable in key ways.

First, *Arcidiacono v. Am. Exp. Co.*, the New Jersey District court expressly noted that the "The Third Circuit has rejected [the *Greenway* case's] interpretation of the statute". *Arcidiacono*, NO. 92-3428 (JEI), 1993 U.S. Dist. LEXIS 4042, at *8, fn. 3 (D.N.J. Mar. 29, 1993) ("Although § 1681b(3)(E) also mentions "a business transaction involving the consumer," the Third Circuit has determined that this expansive language should not be read back into the definition of "consumer report" in § 1681a(d)").  The Ninth Circuit, however, has affirmed that "[w]hen these two sections of the Act, § 1681a(d) and § 1681b(3)(E), are read together, ***as the Act indicates they must be***, the result is clear: When an agency disseminates information bearing on any of the seven characteristics of a consumer listed in § 1681a(d) to a third party, and the agency knows or expects that it will be used 'in connection with a business transaction involving the consumer,' then that information is a 'consumer report'". *Greenway,* 399 F.Supp. 1092, 1095 (D.Ariz. 1974) aff'd, 524 F.2d 1145 (9th Cir. 1975) (emphasis added). The consequence of this is that the only definition of a consumer report within *Arcidiacono* is the narrow purposes of "any offer of credit, insurance, employment, or government benefit or license." *Arcidiacono*, 1993 U.S. Dist. LEXIS 4042, at *12.

The plaintiff there expressly pled that the credit reporting agency and the merchants purchasing the reports *never* intended to use and did *not* actually use the reports to issue credit. *Arcidiacono*, 1993 U.S. Dist. LEXIS 4042, at *11, fn. 5.  Lastly, the reports in *Arcidiacono* **only** provided generalized labels such as "fashion conscious" or "Fifth Avenue sophisticated". However, Experian here provided more detailed information about its consumers than just a generalized label of like "fashion conscious". *See e.g.* Pl.'s RJN, Exhibit D (provides consumer's estimated income, property value, age, and credit quality). Because of the individual specific credit information that Experian provides, Plaintiff adequately alleges that Experian intended, and Tesla used, this information be used for establishing credit. FAC ¶ 3, 31, 88.

Tesla's reliance on *Reynolds v. LeMay Buick-Pontiac-GMC-Cadillac, Inc.*, No. 06-C-

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

1   292 2007 U.S. Dist. LEXIS 55641 (E.D. Wis. July 30, 2007) is also misplaced.  First, *Reynolds*
2   was decided at summary judgment stage and thus has a much more stringent evidentiary
3   standard. *Id.*  Second, the court reasoned that the mailer could not have been used to decide an
4   individual's credit eligibility because it "only listed names and addresses, with the implication
5   that the person was emerging from bankruptcy." *Id*. This non-descript data, the mailer did not
6   give the defendant enough information to treat individuals differently. *Id*. However, as
7   mentioned above, Experian provides Tesla with a laundry list of information about the
8   consumer that is not only specific to the individual, but is significant factors in making credit
9   determinations.

10   **B.    Tesla's Narrow Reading of "Consumer" is Incorrect**

11   Tesla lastly argues that the Mosaic score is not consumer report under the FCRA
12   because it contains only "household level data, not information about individuals." Tesla's
13   Memo., at p. 24 ln. 17.  However, this argument is legally and factually incorrect.

14   First, a consumer's generalized household data is the exact type of data that a consumer
15   report is made of. *See* 15 U.S.C. § 1861a(d)(1) (consumer report is communication about
16   consumer's "character, *general reputation*, personal characteristics, or *mode of living*")
17   (emphasis added). Unsurprisingly, Tesla omits this portion of the definition in its motion.
18   Tesla's Memo., at p. 24, lns. 18-19. The Mosaic score's descriptions assign attributes to the
19   individual about the individual's reputation and mode of living through the individual's
20   household data. For example, when Experian communicates to Tesla through the Mosaic score
21   that the individual falls in the category of "Reaping Rewards," Experian also conveys that the
22   individual is above the age of 74 years old, is a home owner, has established credit, and is brand
23   loyal. *See* Pl.'s RJN, Exhibit D, p. 168-69.  Despite the fact the household has multiple people
24   within it, the Mosaic score still provides a litany of information about a single individual's
25   general reputation and mode of living.

26   Second, of the 90 categories that Experian divides consumers into, 45 of them are
27   households with a size of one person.  In other words, half of the Mosaic score's categories are
28   dedicated to individuals. *See generally,* Pl.'s RJN, Exhibit D. Several of these categories Tesla

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
Costa Mesa, CA 92626

1   itself mentions in its brief, such as "Gotham Blend" and "Rooted Flower Power."

2       Lastly, Tesla's narrow reading goes against the FCRA's purpose of empowering

3   consumer's "right to see that [their] information is kept confidential . . . and [the consumer's]

4   right to be free from unwarranted invasions of his personal privacy." Hearings on S. 823 Before

5   the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong.

6   2 (1969).  To follow Tesla's narrow interpretation would create a loophole in the statute. Credit

7   reporting agencies would be permitted to disclose the consumer's credit bearing information,

8   such as their income, asset values, and age, so long as the data was classified as "household"

9   data.

10       Therefore, Tesla's narrow interpretation of the FCRA is incorrect.

11   **III.**   **DRIVER'S PRIVACY PROTECTION ACT**

12       In light of recent controlling authority in *Andrews v. Sirius XM Radio Inc*., 932 F.3d

13   1253, 1260 (9th Cir. 2019), Plaintiff does not oppose dismissal *without* prejudice of the cause of

14   action under the Driver's Privacy Protection Act.

15   **IV.**   **CONCLUSION**

16       In sum, Plaintiffs respectfully requests that this Court deny Tesla's motion to dismiss

17   Plaintiff's claims under the FRCA and the Electronic Communications Privacy Act. Should the

18   Court find the FAC is not sufficiently pled, Plaintiff respectfully requests leave to amend.

19   *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

20   Date: January 3, 2020           **KAZEROUNI LAW GROUP, APC**

21             By: _/s/ Abbas Kazerounian_

22             Abbas Kazerounian, Esq.
          *Attorneys for Plaintiff*

23

24   **KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)

25   jason@kazlg.com
321 N Mall Drive, Suite R108

26   St. George, Utah 84790
Telephone: (800) 400-6808

27   Facsimile: (800) 520-5523
*Attorney for Plaintiff*

28

**Kazerouni Law Group, APC**
Costa Mesa, California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Kazerouni Law Group, APC, 245 Fischer Avenue, Suite D1, Costa Mesa, California 92626. On January 3, 2020, I served the within document(s):

**PLAINTIFF'S OPPOSITION TO DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PLAINTIFF'S FIRST AMENDED COMPLAINT**

☒     CM/ECF - by transmitting electronically the document(s) listed above to the electronic case filing system on this date before 11:59 p.m.   The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct, executed on January 3, 2020.


_/s/ Abbas Kazerounian____
ABBAS KAZEROUNIAN