COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendant
TESLA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYNE SKILES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TESLA, INC. and EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>　　　　　Defendants. | Case No.  3:17-cv-05434-who<br><br>**TESLA, INC.'S SUPPLEMENTAL REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

After asking this Court for an additional opportunity to oppose Tesla's motion to dismiss (ECF No. 63, "Motion" or "Mot."), Plaintiff's Supplemental Opposition brief ("Supp. Opp.") expressly abandons one cause of action (DPPA), makes no attempt to support another (ECPA), and spends ten pages struggling to defend Plaintiff's Fair Credit Reporting Act ("FCRA") claim through clear misstatements of both the law and the allegations in the First Amended Complaint ("FAC"). In the end, this briefing only confirms that none of Plaintiff's claims are viable and dismissal is necessary.

The core defect of Plaintiff's FCRA claim is that the Act regulates only the disclosure of ***statutorily-defined "consumer reports,"*** but the FAC alleges no facts suggesting that an Experian Mosaic Score could meet that statutory definition. Plaintiff first attempts to escape this flaw by arguing the Mosaic Score is a "consumer report" because Tesla used it for credit decisioning. As before, however, no allegation in the FAC remotely suggests Tesla used his Mosaic score for that purpose, and Plaintiff's arguments rest on demonstrable misrepresentations about what the FAC says. Next Plaintiff claims that, because Tesla allegedly used the Mosaic Score for "marketing and sales purposes," it was used for a FCRA-regulated "business transaction," making it a consumer report under Section 1681b(a)(3)(F)(i). This newfound argument is contrary to the authorities Plaintiff cites and other binding precedent, holding that only the initiation of an actual automobile purchase, not merely a test drive, qualifies as a FCRA "business transaction." Moreover, if mere use for "marketing" after a test drive was a use for a "business transaction," that would actually ***defeat*** Plaintiff's claim because the statute does not require consent to use a "consumer report" in such a transaction. Plaintiff's misunderstanding of FCRA blinds him to the implications of his own contrived argument.

Plaintiff next argues the Mosaic Score is a "consumer report" because Experian ***expected it to be used*** for credit decisions. This argument rests on a combination of further flagrant misrepresentations of the FAC and documents extrinsic to the FAC. What is more, even the new evidence Plaintiff impermissibly seeks to import into the FAC supports dismissal. It shows that Experian did not expect Mosaic Scores to be used for establishing credit and that they are based on household- or ***neighborhood-level*** data, whereas Plaintiff concedes that a document must provide individual-level information to qualify as a "consumer report."

For these reasons and others laid out in the Motion and original reply brief (ECF No. 74, "Reply" or "Rep.") Plaintiff's claims are meritless. The Court should dismiss the FAC with prejudice.

## II. ARGUMENT

### A. The Mosaic Score Is Not a "Consumer Report."

As Tesla argued in its Motion and Reply, and as Plaintiff now stipulates, to be a "consumer report," a document must be "used, expected to be used, or collected in whole or in part for" credit decisioning or another FCRA-regulated purpose. (15 U.S.C. § 1681a(d)(1); Mot. at 20-21; Rep. at 13; Supp. Opp. at 2.) Tesla also argued and Plaintiff does not dispute that a "consumer report" must convey information about an individual. (Mot. at 24-25; Rep. at 15; Supp. Opp. at 8-9.) Plaintiff claims that the Mosaic Score meets these requirements because: (1) Tesla used the Mosaic Score as a factor in establishing credit, (2) Tesla used it in a FCRA regulated "business transaction," and (3) Experian expected it to be used for credit decision-making. Plaintiff also reiterates his claim that the Mosaic Score provides individual-level information. Plaintiff is wrong on all counts.

#### 1. Plaintiff Never Alleged Tesla Used the Mosaic Score to Establish Credit.

Plaintiff argues that "a reasonable inference can be drawn that Tesla utilized the Mosaic Score as a factor in establishing credit" because the Mosaic Score provides information about "factors lenders use in establishing credit" and Tesla "requested this detailed credit information at the test drive phase of the business transaction." (Supp. Opp. at 3.) Plaintiff then claims, without citation to the FAC, that "[s]uch sales purposes contribute to the production of the result of a consumer eventually buying and financing a Tesla vehicle." (*Id*.) In other words, Plaintiff appears to be arguing that, because Tesla obtained his Mosaic Score and theoretically *could have* used it for establishing credit, it can be inferred that Tesla did use Plaintiff's Mosaic Score for that purpose. This argument fails.

Even if the Mosaic Score could have been used to determine Plaintiff's creditworthiness (as explained below, it could not), Plaintiff *never alleged* that Tesla actually used the Mosaic Score for this purpose, or anything close to it. Plaintiff claims that he alleged that Tesla requested his Mosaic Score to assess whether he "was likely going to be able to finance the vehicle," citing FAC paragraphs 31 and 35. (Supp. Opp. at 3.) Yet neither of those paragraphs allege that fact in any way. (FAC ¶ 31 (alleging use for "marketing and sales purposes"); ¶ 35 (simply saying Tesla uses the Mosaic Score

"as it sees fit").) Indeed, Plaintiff did not even allege that Tesla *offers* credit services, or that he sought them, let alone that Tesla used his Mosaic Score to determine his eligibility for credit. Given the absence of any allegations suggesting that Tesla actually used Plaintiff's Mosaic Score to make a "credit-related decision," the Court should not and cannot infer that fact from the FAC. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff *pleads factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." (internal citations omitted and emphasis added)); *Moss v. United States Secret Serv.*, 572 F.3d 962, 971-72 (9th Cir. 2009) (complaint suggesting "mere possibility" of wrongdoing "is not enough"); Mot. at 22; Rep. at 13-14.

### 2. Plaintiff Did Not Allege that Tesla Used the Mosaic Score in Connection With Any FCRA-Related "Business Transaction" Under Section 1681b.

In addition to regulating information used for credit decisions (15 U.S.C. § 1681b(a)(3)(A)), FCRA regulates information used for a "legitimate business need . . . in connection with a business transaction that is initiated by the consumer" (15 U.S.C. § 1681b(a)(3)(F)(i)). Unable to escape his allegation that Tesla used his Mosaic Score only "for marketing and sales purposes" (FAC ¶ 31), Plaintiff argues that such use qualifies as a "business transaction" as defined by FCRA. (Supp. Opp. at 4.) Plaintiff cites no authority for his novel position, and the authorities he cites contradict his view.

The FTC Advisory Opinion on which Plaintiff relies establishes that marketing activities do not qualify as a FCRA-regulated business transaction. (*See* P's RJN, Ex. B.) As the FTC explains, a "business transaction initiated by the consumer" does not begin until "it is clear both to the consumer and to the dealer that the consumer *is actually initiating the purchase or lease* of a specific vehicle. . . ." (P's RJN, Ex. B at 2 (emphasis added).) Additionally, the FTC advises that "a request to 'test drive' a vehicle does not indicate an intent to initiate the purchase or lease of the vehicle," nor does "comparison shopping" and asking "about prices and financing." (*Id*. at 2.) Thus, the FTC itself defines "business transaction" in a manner that excludes Plaintiff's test drive here.

Consistent with this guidance, the Ninth Circuit has interpreted the language in Section 1681b even more narrowly and recognized that "the majority of courts that have addressed the issue" have

Cooley LLP
Attorneys At Law
San Francisco

3.

Tesla's Supp. Reply iso Mot. to Dismiss FAC
3:17-cv-05434-WHO

concluded that, to qualify as a Section 1681b "business transaction," "a transaction 'must relate to one of the other specifically enumerated transactions in 1681a(d) and b(3), *i.e.*, credit, insurance eligibility, employment, or licensing.'" *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) (declining to extend Section 1681b to include reports "used for 'business, commercial, or professional purposes'") (citing *Houghton v. New Jersey Mfrs. Ins. Co.*, 795 F.2d 1144, 1149 (3d Cir. 1986)). It went on to note that, according to the Third Circuit, "a 'broad interpretation of the business transaction language of 1681b(3)(e) would render the specificity of 1681a(d) [defining 'consumer report'] and b(3) meaningless'" and indicated that "[m]ost district courts have reached similar conclusions." *Id*. This too defeats Plaintiff's bid for a loose reading of FCRA that could encompass the alleged facts here.

The case Plaintiff relies on does not hold otherwise. In *Greenway v. Information Dynamics, Ltd.*, the court found that summaries of individuals' check cashing histories that were disseminated with the purpose of "furnish[ing] subscribing merchants with information on consumers who may tender checks in payment for purchases so that the subscriber may decide whether or not to accept the check" were expected to be used "in connection with a business transaction—a purchase of goods or services—between the subscriber and the consumer." 399 F. Supp. 1092, 1095 (D. Ariz. 1974). Thus, consistent with the FTC Advisory Opinion, the court in *Greenway* found that a "business transaction" existed where a customer had actually initiated the purchase of particular goods and tendered a check in payment. Nothing in the *Greenway* decision suggests that the definition of "business transaction" extends to mere marketing that has not yet culminated in a particular purchase.

Here, Plaintiff alleged only that he "brows[ed]" a Tesla showroom and agreed to test drive a vehicle. (FAC ¶¶ 17-19.) It is clear that, at the time of the alleged FCRA violation, he had not initiated a purchase or lease, and he certainly does not allege that Tesla used his Mosaic Score in connection with his eventual purchase. Thus, Plaintiff has not alleged that Tesla used his Mosaic Score in connection with a FCRA-regulated "business transaction" and cannot show that Tesla's alleged use of the score for "marketing and sales purposes" (FAC ¶ 31), converts it into a "consumer report."

### 3. Plaintiff Alleged No Facts Establishing that Experian Expected the Mosaic Score to Be Used to Establish Credit.

Plaintiff argued in his original opposition that the Mosaic Score is a "consumer report" under

FCRA Section 1681a(d)(1) because Experian *expected it to be used or collected for*" credit decision-making. (Opp. at 24 (emphasis added).) Tesla responded by arguing that Plaintiff's scant allegations on this front were conclusory boilerplate. (Mot. at 22, Rep. at 13-14.) Plaintiff's only new attempted rebuttal, (Supp. Opp. at 4-5), rests on extrinsic documents not cited in the FAC or subject to judicial notice, and is unavailing even with those documents.

First, Plaintiff asks the Court to infer that the Mosaic Score was expected to be used for credit decisions because it supposedly contains information "that lender's [sic] use to determine credit eligibility." (Supp. Opp. at 5.) Plaintiff, however, then describes the contents of the Mosaic Score solely by misstating the allegations in the FAC and pointing to extrinsic facts **he never alleged**. Specifically, the Supplemental Opposition twice asserts that "the Mosaic Score conveys a consumer's age and income." (Supp. Opp. at 3, 5.) However, the only supporting cites to the FAC are paragraphs 30 and 62, neither of which allege anything about age or income. (*See* FAC ¶ 30 (alleging that "data factors include" unspecified "'property characteristics, and summarized credit and automotive data'"); ¶ 62 (alleging unspecified information about "financial condition and credit worthiness (among other factors)").) Plaintiff then cites snippets from the lengthy Mosaic USA E-Handbook, which was not mentioned in, much less attached to, the FAC. Plaintiff cannot use this extrinsic document to add in facts he never alleged. *See, e.g.*, *Puma SE v. Forever 21, Inc.*, No. 17-cv-2523, 2017 U.S. Dist. LEXIS 211140, at *20 (C.D. Cal. Jun. 2, 2017) ("[E]ven if properly subject to judicial notice, the referenced documents cannot be used to amend the FAC. . . . Rather than defend the adequacy of its allegations, Puma's reliance on ***newly alleged facts*** and extrinsic documents in its opposition brief suggests a tacit admission that the FAC lacks the requisite pleadings necessary" (emphasis added)); *In re Turbodyne Techs., Inc. Sec. Litig.*, No. 99-cv-00697, 2000 U.S. Dist. LEXIS 23020, at *30 (C.D. Cal. Mar. 15, 2000) (emphasis added) ("[C]ourts may not 'take into account additional facts asserted in a memorandum opposing the motion to dismiss.'").

Moreover, if the Court considers this extrinsic evidence, it only proves that Experian did ***not*** expect the Mosaic Score to be used for credit decisioning. Experian's website advertises a different Experian product, "Summarized Credit Statistics," for "target[ing] consumers" for credit offers. (*See* Supp. Opp. at 5; P's RJN Ex. E at 1.) Unlike the Mosaic Score, which groups consumers into broad

categories like "credit aware" or "cash over credit" based on their household or neighborhood, the Summarized Credit Statistics provide detailed information about an individual's finances, including his or her number of delinquent or bankrupt accounts, outstanding balances on open bank cards, and "Good vs. Bad Credit Score." (*Compare* P's RJN Ex. D, to Ex. E at 1.)  The general information provided by the Mosaic Score bears no resemblance to this individualized and highly detailed information for evaluating creditworthiness.

Second, Plaintiff claims that Experian's advertising demonstrates its intent that the Mosaic Score be used for credit decisions.  However, Plaintiff then points to evidence proving that Experian specifically advertised the Mosaic Score as a ***target marketing tool***. (*See, e.g.*, Supp. Opp. at 4 (target marketing is "exactly what the Mosaic Score was created [for]," "Experian advertises [the Mosaic Score] as being a tool to focus a business' 'resources and increase site performance, maximize sales conversion, ***optimize consumer targeting to ensure that the right product offerings are matched to the right audience***.'" (emphasis in original)) (citing P's RJN, Ex. D at 3); 5 ("Experian also advertises the Mosaic Score itself as being a tool to, 'acquire, manage and develop profitable customer relations . . . maximize sales conversion . . . and identify investment opportunities.'") (citing P's RJN, Ex. D. at 3).)  That Experian advertised the Mosaic Score for marketing, not credit decisioning, demonstrates that it is ***not*** a "consumer report" as defined by Section 1681(a)(d)(1).  *See supra* Section II(A)(2).[1]

Additionally, Plaintiff's attempt to avoid judicial notice of Experian's express statement that its Mosaic Score ***should not*** be used for credit decisioning (Supp. Opp. at 6) is baseless.  Tesla is not seeking judicial notice of Experian's publicly available webpage for the truth of the statements made on it, but to show what Experian said to its customers regarding its expectations for their use of its marketing products.  (Tesla's RJN, Dkt No. 65 at 5.)  Plaintiff cites no authority suggesting that the Court cannot take judicial notice of the Experian website for the purpose of determining what Experian told customers.  Plaintiff also argues, without support, that a Court cannot take judicial notice of facts

---

[1] Plaintiff attempts to focus on a single sentence in Experian's 189-page Mosaic USA E-Handbook noting that "[s]ources of the descriptive content include contributions from Experian Simmons, Hitwise, Auto Market Statistics and Summarized Credit Statistics." (Supp. Opp. at 5; P's RJN, Ex. D at 5.)  Plaintiff identifies no instances where Experian actually advertises its Mosaic Score for determining credit eligibility, and a single mention of the fact that Experian's Mosaic Score draws on some unidentified information from Experian's Summarized Credit Statistics changes nothing.

that contradict the pleadings.  Quite to the contrary, it is well-settled that the Court is "not [] required to accept as true allegations that contradict . . . matters properly subject to judicial notice."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sami v. Wells Fargo Bank*, No. 12-00108, 2012 U.S. Dist. LEXIS 38466, at *10-11 (N.D. Cal. Mar. 21, 2012) (same); *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 970 (E.D. Cal. 2004) (same).  Thus, Tesla's request for judicial notice of Experian's website was proper, and the Court should consider it for purposes of determining how Experian advertises the Mosaic Score.

Thus, the Supplemental Opposition cannot cure Plaintiff's failure to allege facts supporting his conclusory and contradicted allegation that Experian expected the Mosaic Score to be used for credit eligibility.  (*See* FAC ¶ 88.)  Plaintiff's own judicially-noticed documents, if they are considered, demonstrate that the Mosaic Score has little in common with actual credit statistics and that Experian expressly advertises it as a marketing tool, not as a means to determining credit eligibility.

### 4. The Mosaic Score Does Not Provide Information About Individuals.

Plaintiff does not dispute that, to be a "consumer report," the Mosaic Score must convey information about an ***individual*** consumer.  (Mot. at 24-25; Reply at 15; Supp. Opp. at 8-9.)  Instead, he argues that the Mosaic Score meets this requirement because it provides individual-level information about a consumer's "reputation and mode of living through the individual's household data." (Supp. Opp. at 8.)  Plaintiff's argument again rests on facts outside the FAC.  (*See* Supp. Opp. at 8-9, citing solely RJN Ex. D.)  Even putting that aside, Plaintiff's documents prove him wrong.

As the Mosaic USA E-Handbook states, the data underlying the Mosaic Score is accurate only "***by either household or neighborhood***."  (P's RJN Ex. D at 4 (emphasis added).)  It does not provide individualized data, but rather general information about the household ***or neighborhood*** in which an individual resides.  As a result, the Mosaic Score cannot provide any reliable information about a single individual's "mode of living" or "reputation," as Plaintiff claims. (Supp. Opp. at 8.)  Similarly, Plaintiff's claim that 45 of the Mosaic Score categories are "households with a size of one person" is false.  Despite the E-Handbook's generalization that these categories include households with an average size of "1 person," many of those categories include both "singles and couples" and do not distinguish between the two.  (*See, e.g.*, P's RJN Ex. D at 121, 129.)  Because two housemates may

have different ages, incomes, modes of living, reputations, and other characteristics, household-level information cannot be used to draw conclusions about individual consumers.[2]

Lastly, Tesla's (correct) understanding of FCRA certainly does not create a "loophole" (Supp. Opp. at 9) in the Act's protections. FCRA regulates the dissemination and use of consumer credit reports containing personal information about individuals, and it was never intended to reach general facts solely about a household, much less an entire neighborhood. Such generalized information is appropriately outside its scope.

### 5. Plaintiff's Attempt to Distinguish Tesla's Case Law Is Unavailing.

Plaintiff also has no answer to Tesla's on-point case law. In *Arcidiacono v. American Express Co.*, the court held that lists assigning consumers to broad categories based on their "actual credit card use" were not consumer reports because they were used for marketing, which the court correctly recognized, as Tesla explained above, is not a FCRA-regulated purpose. No. 92-3428, 1993 WL 94327, at *1-4 (D.N.J. Mar. 29, 1993). In so holding, the court adopted the narrower definition of "business transaction" embraced by the Ninth Circuit in *Mone* and held that "'a consumer relationship must exist between the party requesting the report and the subject of the report'" in order for the report to qualify as a "consumer report." *Id*. at *2 (quoting *Houghton*, 795 F.2d at 1149)). The court reasoned that "the relationship between a mailer of promotional materials and the recipient of those materials is not a type of 'consumer relationship' regulated by" FCRA. *Id*. at 3 n.6. Additionally, contrary to Plaintiff's assertion (Supp. Opp. at 7), the court declined to address any tension between the *Greenway* decision on which Plaintiff relies and Third Circuit precedent because "the holding in that case is not inconsistent with a narrow reading of the phrase 'a business transaction involving the consumer.'" *Arcidiacono*, 1993 WL 94327 at *2 n.3. Moreover, as shown above, Plaintiff's claim that the lists in *Arcidiacono* are distinguishable from the Mosaic Score because the Mosaic Score provides "individual specific credit information" is incorrect. Like the lists in *Arcidiacono*, the Mosaic Score groups consumers into categories by household or neighborhood and does not provide individual-specific

---

[2] To the extent Plaintiff is arguing that his own Mosaic Score provided individual-level information due to the size of his household, he does not allege that his assigned category was based on household (as opposed to neighborhood) data, or that he lived alone.

information.  (*See supra* Section II.A.4.)  *Arcidiacono* therefore provides strong support for the conclusion that the Mosaic Score is not a "consumer report."  (Mot. at 23.)

Similarly, in *Reynolds v. LeMay Buick-Pontiac-GMC-Cadillac, Inc.*, the court found that reports providing the names and addresses of persons emerging from bankruptcy that were used to generate mailing lists were not "consumer reports" because the mailers "made no difference in determining eligibility for credit." No. 06-c-292, 2007 WL 2220203, at *3 (E.D. Wis. Jul. 30, 2007). Plaintiff's claim that the reports in *Reynolds* are distinguishable from a Mosaic Score because the score provides "a laundry list of information about the consumer that is not only specific to the individual, but is significant [sic] factors in making credit determinations" mischaracterizes the Mosaic Score and is unsupported by the FAC, as discussed above. Moreover, like the reports in *Reynolds*, the Mosaic Score was used for marketing, not for determining eligibility for credit.  (*See supra* Section II.A.1.) Thus, like the reports in *Reynolds*, the Mosaic Score is not a "consumer report." (Mot. at 23-24.)

### B. Plaintiff's Assertion That the Use of a Mosaic Score for Marketing Makes It a FCRA-Regulated "Business Transaction" Is Incoherent and Defeats His Claims.

As discussed, Plaintiff claims that the Mosaic Score is a "consumer report" because Tesla used it for marketing, which Plaintiff asserts qualifies as a use in connection with a FCRA-regulated "business transaction" under Section 1681b.  (Supp. Opp. at 4.)  Plaintiff is wrong, as shown above. But, if his argument were accepted, he still could not state a FCRA claim, because consent is ***not required*** if a consumer report is used in connection with the only "business transaction" FCRA governs, which is "a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(i), 1681b(f)(1) (expressly authorizing use consumer reports for any purpose in Section 1681b); *see Jones v. Best Serv. Co.*, No. 14-9872, 2017 WL 490902, at *8 (C.D. Cal. Feb. 6, 2017) ("[A] credit report can be accessed without a consumer's permission for other permissible purposes' under the FCRA."); *Salmas v. Portfolio Recovery Associates, LLC*, No. 13-0575-, 2013 WL 6182614, at *3 (C.D. Cal. Nov. 25, 2013). Plaintiff has so badly misinterpreted FCRA that he has argued himself out of his claim.  In his contortions to show (contrary to the FAC) that the Mosaic Score is a consumer report, he inadvertently established that Tesla did not need his consent to get it.

Plaintiff argues that "[a]lthough Tesla utilized the Mosaic Score for a legitimate need, Tesla

did so without consumer consent in violation of the FCRA." (Supp. Opp. at 4.) For support, Plaintiff cites a FTC Advisory Opinion addressing "the propriety of an auto dealership obtaining a consumer report from a consumer reporting agency ('CRA') on an individual who visits the showroom." (*Id*.; P's RJN, Ex. B at 1.) Plaintiff's reliance is flatly misplaced. The FTC Advisory Opinion affirms that "written permission" is unnecessary where the dealer has a "legitimate business need" in connection with a "business transaction initiated by the consumer." (P's RJN, Ex. B. at 1-2.) Thus, if the Court accepts Plaintiff's argument that Tesla's use of the Mosaic Score for "marketing and sales purposes" was for a "legitimate business need" in connection with a "business transaction initiated by the consumer" as described in Section 1681b (*see* Supp. Opp. at 4), it must also find that no consent was required. (*See* 15 U.S.C. § 1681b (f)(1); P's RN, Ex. B. at 2.)

\*\*\*\*\*

Plaintiff's FCRA claims fail as a matter of law. Plaintiff has no allegations establishing that the Mosaic Score is a FCRA-regulated consumer report, Plaintiff's characterizations of the FAC are false and misleading, Plaintiff's resort to extrinsic evidence is improper and unavailing, and Plaintiff's machinations to show that Mosaic is a consumer report led him to shoot himself in the foot.

### C. Plaintiff's DPPA and ECPA Claims Should Be Dismissed with Prejudice.

Plaintiff concedes his DPPA claim is meritless and does not oppose dismissal (Supp. Opp. at 1, 9.) He also makes no attempt to further defend his ECPA claim, which should be dismissed with prejudice for the reasons described in Tesla's original Motion and Reply. (*See* ECF Nos. 63, 74.)

Additionally, the arguments in Plaintiff's supplemental brief regarding FCRA actually *undermine* his ECPA claim. In discussing his FRCA claim, Plaintiff concedes that Tesla had a legitimate purpose in using the Mosaic Score. (*See*, *e.g.*, Supp. Brief at 4.) It is impossible to square this statement with his earlier argument that, for the ECPA claim, Tesla had an "improper purpose" for the alleged interception. (Opp. at 20.) Given this new contention that Tesla, in fact, had a "legitimate" purpose, the Court clearly should dismiss Plaintiff's ECPA claim with prejudice.

### III. CONCLUSION

Plaintiff's claims fail as a matter of law, and the FAC should be dismissed with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

TESLA'S SUPP. REPLY ISO MOT. TO DISMISS FAC
3:17-CV-05434-WHO

| | | |
|---|---|---|
| 1 | Dated: January 31, 2020 | COOLEY LLP |
| 3 | | By: /s/ Jeffrey M. Gutkin |
| | | Jeffrey M. Gutkin |
| 4 | | Attorneys for Defendant |
| 5 | | Tesla, Inc. |

218894467

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

**TESLA'S SUPP. REPLY ISO MOT. TO DISMISS FAC**
**3:17-CV-05434-WHO**