Cheryl O'Connor (State Bar No. 173897)
John A. Vogt (State Bar No. 198677)
Ryan D. Ball (State Bar No. 321772)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
(T) 949-851-3939
(F) 949-553-7539
coconnor@jonesday.com
javogt@jonesday.com

Attorneys for Defendant
Experian Information Solutions, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE SKILES, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TESLA, INC. f/k/a TESLA MOTORS, INC., EXPERIAN INFORMATION SOLUTIONS, INC., APPSTEM MEDIA LLC, and SALESFORCE VENTURES, LLC,<br><br>    Defendants. | Case No. 3:17-cv-05434-WHO<br><br>Assigned to:  Judge William H. Orrick<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**<br><br>Date:          February 19, 2020<br>Time:          2:00 P.M.<br>Courtroom:  2, 17th Floor |

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3    I.    SKILES SUED THE WRONG EXPERIAN ENTITY ........................................................ 1

4    II.   THE FCRA CLAIM SHOULD BE DISMISSED .............................................................. 3

5          A.    A Mosaic Report Does Not Constitute A Consumer Report .................................. 3

6          B.    Skiles' FCRA Claims Are Facially Invalid............................................................. 6

7    III.  THERE ARE NO ALLEGATIONS TO SUPPORT A WILLFULNESS CLAIM .......... 15

8    IV.   CONCLUSION ............................................................................................................... 15

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Abbink v. Experian Information Solutions, Inc.*,
    Case No. 19-cv-1257-JFW-PJWx, 2019 WL 6838705 (C.D. Cal. Sept. 20
    2019) ...................................................................................................................8, 9, 11, 13

*Arcidiacono v. Am. Exp. Co.*,
    No. 92-cv-3428, 1993 WL 94327 (D.N.J. Mar. 29, 1993) ....................................................6, 15

*Banga v. Experian Info. Sols., Inc.*,
    No. 09-cv-04867, 2013 WL 5539690 (N.D. Cal. Sept. 30, 2013)...........................................15

*Douglass v. USAA Casualty Insurance, Inc.*,
    718 Fed. Appx. 523 (9th Cir. 2017).......................................................................................7

*Garcia v. UnionBancal Corp.*,
    2006 WL 2619330 (N.D. Cal. 2006).....................................................................................4, 5

*Greenway v. Information Dynamics, Ltd.*,
    399 F. Supp. 1092 (D. Ariz. 1974).......................................................................................3, 4

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995)..............................................................................................13

*Harrington v. Choicepoint Inc.*,
    No. 05-cv-01294-MRP, 2006 WL 8198396 (C.D. Cal. Oct. 11, 2006)....................................6

*Harris v. Database Management & Marketing, Inc.*,
    609 F. Supp. 2d 509 (D. Md. 2009) .......................................................................7, 11, 12, 13

*Henderson v. Corelogic Nat'l Background Data, LLC*,
161 F. Supp. 3d 389 (E.D. Va. 2016).....................................................................................12, 13

*Heyer v. Experian Info. Sols. Inc.*,
    No. 19-cv-15, 2019 WL 2869337 (E.D. Wis. July 3, 2019) ....................................................15

*In re Gren*,
    633 F.2d 825 (9th Cir. 1980)................................................................................................7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Song fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ....................................................................2

*Individual Reference Servs. Grp., Inc. v. F.T.C.*,
   145 F. Supp. 2d 6 (D.D.C. 2001) ..........................................................................6

*Johnson v. Wells Fargo Home Mortg., Inc.*,
   558 F. Supp. 2d 1114 (D. Nev. 2008) ...................................................................4

*Jones v. Best Serv. Co.*,
   2017 WL 490902 (C.D. Cal. Feb. 6, 2017)..........................................................14

*Kinder v. Harrah's Entm't, Inc.*,
   No. 07-cv-2226, 2008 U.S. Dist. LEXIS 132290 (S.D. Cal. Jan. 22, 2008)............3

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005).................................................................................2

*Levine v. World Fin. Network Nat'l Bank*,
   437 F.3d 1118 (11th Cir. 2006)............................................................................11

*Mone v. Dranow*,
   945 F.2d 306 (9th Cir. 1991).................................................................................4

*Moreland v. CoreLogic SafeRent LLC*,
   No. 13-cv-470, 2014 WL 12783274 (C.D. Cal. May 12, 2014) ...........................13

*Parker v. Equifax Info. Servs., LLC*,
   No. 15-cv-14365, 2017 WL 4003437 (E.D. Mich. Sept. 12, 2017)........................6

*Pintos v. Pac. Creditors Ass'n*,
   565 F.3d 1106 (9th Cir. 2009)...............................................................................13

*Rosco v. Experian Info. Sols.*,
   2017 WL 6061977 (E.D. Wash. Dec. 7, 2017).......................................................14

*Scharpf v. AIG Marketing, Inc.*,
   242 F.Supp.2d 455 (W.D. Ky. 2003) ....................................................................10

*Sharp v. Nationstar Mortg., LLC*,
   No. 14-cv-00831-LHK, 2015 WL 106844 (N.D. Cal. Jan. 7, 2015) .......................1

*Steinmetz v. Am. Honda Fin.*,
   No. 2:19-cv-64-JCM-VCF, 2019 WL 4415090 (D. Nev. Sept. 16, 2019) .................2, 3, 6, 15

- iii -

*Stergiopoulos v. First Midwest Bancorp, Inc.,*
    2004 WL 5550488 (N.D. Ill. June 23, 2004) ....................................................................1, 7, 14

*Telesaurus VPC, LLC v. Power,*
    623 F.3d 998 (9th Cir. 2010).................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- iv -

1   Wayne Skiles does not oppose dismissal of his claims under the Driver's Privacy Protection

2   Act and the Electronic Communications Privacy Act.  Instead, Skiles devotes his entire opposition

3   to the questions of whether he sued the correct Experian entity, and whether his claim under Fair

4   Credit Reporting Act may move forward.  As shown below, his opposition fails on both counts.

5   **I.    SKILES SUED THE WRONG EXPERIAN ENTITY**

6   The Experian entity that prepares and furnishes a "Mosaic score" is Experian Marketing

7   Services, not EIS.  Nothing in Skiles' opposition establishes otherwise.

8   <u>First</u>, Skiles argues that EIS has never raised the fact that he sued the wrong Experian entity.

9   (*See* Opp. at 3:9.)  That is incorrect.  (*See* Dkt. 57 (Joint Case Management Statement) at 3:21-4:14

10  ("Plaintiff has sued the wrong party in this case. . . . Counsel for EIS has repeatedly informed

11  counsel for Plaintiff that Plaintiff has sued the wrong defendant.") and Ex. A thereto (declaration

12  attesting that EIS does not prepare or furnish Mosaic scores).)

13  <u>Second</u>, Skiles' contention that the Court, pursuant to a request for judicial notice, may not

14  consider the truth of the matters contained within the Mosaic USA Product Sheet or the Consumer

15  Lifestyle Segmentation Page establishing that it is Experian Marketing—not EIS—that prepares

16  and furnishes "Mosaic scores" also is incorrect.   The complaint expressly incorporates both

17  documents, *see* FAC, ¶ 30, n.3, and neither party disputes their authenticity.[1]  Skiles relies upon

18  both documents to support his claims, *see* FAC, ¶ 30 n.3, and uses both documents to support his

19  assertion that "[t]he 'Mosaic' score provided by Experian to Tesla falls within the [FCRA]

20  definition of a 'consumer report[.]'"  (*Id*. ¶¶ 86-87, n.8.)  Because both referenced documents are

21  cited in support of an allegation that is necessary to state a FCRA claim—that a Mosaic score is a

22  consumer report—they "form[] the basis of the plaintiff's claim,'" and are incorporated by

23  reference.  *Sharp v. Nationstar Mortg., LLC*, No. 14-cv-00831-LHK, 2015 WL 106844, at *4 (N.D.

24  Cal. Jan. 7, 2015) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  In the Ninth

25  Circuit, where, as here, a document is incorporated by reference into a complaint to support the

26  claims alleged, and there is no dispute concerning its authenticity, the Court may consider the

---

[1] Copies of the "Mosaic USA Product Sheet" and "Consumer Lifestyle Segmentation Page" are contained in Exhibits A and C to Dkt. 65-2, respectively.

contents of the document in deciding a motion to dismiss under Rule 12(b)(6).  *See Knievel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005); *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 880, 884-85 & n.2 (N.D. Cal. 2015).

Third, with regard to content, Skiles contends that the "inclusion of the name 'Experian Marketing Services' in the [Mosaic USA Product Sheet] does not definitively show that the wrong party has been named." (*See* Opp. at 4:13-14.)  That too is incorrect.  To begin with, Skiles ignores the Consumer Lifestyle Segmentation Page—which also is incorporated by reference into the complaint—which begins as follows:  "***Experian Marketing Services'*** Mosaic USA is a household-based consumer lifestyle segmentation . . . ." (*See* Dkt. 65-2, Ex. C (emphasis added).)  The Mosaic USA Product Sheet is in accord, providing that that Mosaic is a product of "Experian Marketing Services," with the company name in the footer of each page, and the company's name, address, and contact information on the last page.  (*See* Dkt. 65-2, Ex. A.)

Skiles maintains that because the Mosaic USA Product Sheet says that "Experian and the Experian marks used herein are trademarks or registered trademarks of Experian Information Solutions, Inc.," it is "*plausible*" that "'Experian Marketing Services' is merely the entity that markets the Mosiac score to potential customers while Experian Information Solutions, Inc. actually offers that product and is responsible for it." (*See* Opp. at 4:16-18.)  That contention is ***implausible*** because the incorporated documents say the ***opposite***—namely, that "Mosaic USA" is a product of "Experian Marketing Services." (*See* Dkt. 65-2, Ex. C.)  Furthermore, Experian Marketing Services is the only company whose contact information is contained on the documents to utilize the Mosaic product.  (*See* Dkt. 65-2, Exs. A & C.)  That certain trademarks belonging to EIS are contained on marketing documents for the Mosaic product—and there is a note at the end of the documents that says that such trademarks belong to EIS—does not mean that EIS prepares and furnishes Mosaic Scores.  *See Steinmetz v. Am. Honda Fin.*, No. 2:19-cv-64-JCM-VCF, 2019 WL 4415090, at *8 (D. Nev. Sept. 16, 2019) (rejecting same argument).

Fourth, Skiles asks this Court to ignore *Steinmetz*, arguing that *Steinmetz* improperly considered online marketing materials confirming that Experian Marketing—not EIS—owns and sells information in ConsumerView, the ***same*** database from which a Mosaic score is generated.

But like Skiles, the *Steinmetz* plaintiff expressly incorporated these materials into his complaint, and thus their contents were properly subject to judicial notice. *See id.* at *8 ("reviewing the online brochure referenced in Steinmetz's complaint . . . [the court] agrees with Experian: those products are provided by Experian Marketing Services, not [EIS]"). Skiles has not presented any reason why this Court should reach a different conclusion than *Steinmetz* over the same materials.

Fifth, Skiles' reliance on *Kinder v. Harrah's Entm't, Inc.*, No. 07-cv-2226, 2008 U.S. Dist. LEXIS 132290, at *4 (S.D. Cal. Jan. 22, 2008) is misplaced. Citing *Kinder*, Skiles contends that, in ruling on a motion to dismiss challenging that the plaintiff named the wrong party, a court may not "weigh evidence," and instead "must take all allegations as true." (Dkt. 102 at 5:27-6:5.) But EIS is not asking the Court to "weigh evidence" or to disregard the truth of Skiles' allegations. Instead, EIS is asking the Court to accept the truth of the contents of documents that Skiles has incorporated by reference into his complaint, which demonstrate that he sued the wrong party.

In short, because the documents that Skiles has incorporated into the complaint say, on their face, that Mosaic is a product of Experian Marketing, Skiles' suit may not proceed until the correct Experian entity is named.

## II.   THE FCRA CLAIM SHOULD BE DISMISSED

Leave to amend to name the correct Experian entity should be denied on grounds of futility because, regardless of which Experian entity Skiles sues, his FCRA claims are facially baseless.

### A.   A Mosaic Report Does Not Constitute A Consumer Report

Skiles' claim that a Mosaic score is an FCRA-regulated consumer report is grounded on an incorrect interpretation of the law that a report used purely for target marketing purposes can constitute a consumer report. In support of that position, Skiles relies upon a single outdated case, *Greenway v. Information Dynamics, Ltd.*, 399 F. Supp. 1092 (D. Ariz. 1974). Based upon *Greenway*, Skiles attempts to expand the definition of a consumer report by claiming that a Mosaic score can constitute a consumer report if it is used as "a factor in establishing the consumer's eligibility *or for marketing or sales in a business transaction involving the consumer*." (Opp. at 14:26-27.) Not so.

In *Greenway*, the court construed Sections 1681a(d) and 1681b(3)(E) together to conclude

that a report "used in connection with a business transaction involving the consumer" constitutes a consumer report.  While Skiles acknowledges that "[t]he Third Circuit **rejected** [the *Greenway* case's] interpretation of the statute," *see* Opp. at 19:23 (emphasis added), his opposition ignores that the ***Ninth Circuit subsequently did as well***, adopting the Third Circuit's conclusion:  "Reports used for 'business, commercial, or professional purposes' are not within the purview of the statute." *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991).  As the Ninth Circuit explained, "a 'broad interpretation of the 'business transaction' language of § 1681b(3)(E) would render the specificity of §§ 1681a(d) defining 'consumer report' and b(3) meaningless." *Id.* (quoting *Houghton v. New Jersey Mfrs. Ins. Co.*, 795 F.2d 1144, 1149 (3d Cir .1986)); *see also Johnson v. Wells Fargo Home Mortg., Inc*., 558 F. Supp. 2d 1114, 1123 (D. Nev. 2008) (recognizing that the "language of § 1681b does not expand the definition of consumer report; rather, it instructs the consumer reporting agencies on when it is permissible to furnish a consumer report").

Thus, to qualify as a consumer report, the report must be used or expected to be used in evaluating "an individual's eligibility for credit, insurance or employment.  A contrary construction of the statute would frustrate Congress' intent." *Mone*, 945 F.2d at 308.  Yet, Skiles urges this Court to adopt a contrary construction, which is against controlling Ninth Circuit precedent and the intent of Congress.  The Court should reject that invitation.  Because Skiles cannot show that a Mosaic score is used, or expected to be used, in assessing whether to extend a consumer credit, he cannot establish that it is a consumer report.  His claims thus fail. *See Garcia v. UnionBancal Corp.*, 2006 WL 2619330 at *2, n. 3 (N.D. Cal. 2006) (unless there are facts establishing the existence of the consumer report, there is no claim under Section 1681b).

Skiles contends that "a generalized marketing tool" can be "used as a factor in establishing credit," relying on a 2000 FTC opinion addressing Trans Union's sale of a targeting marketing list. (Opp. at 16.)  Skiles is mistaken.  In the 2000 opinion, the FTC considered whether a list of names and addresses of individuals who fell into particular categories based upon ***tradeline*** information—*e.g.*, credit limits, open dates of loans, number of tradelines, type of tradelines, or the mere existence of a tradeline—qualified as consumer reports.  The FTC answered in the affirmative, finding "that the ***existence-of-tradeline information***, as well as other information Trans Union

disclosed in its target marketing lists, meets the Section 603(d) definition of a consumer report." *Id.* at 16.  Critical to the FTC's analysis was "the fact that Trans Union uses CRONUS information in its target marketing business," and Trans Union was "the only CRA that sells to target marketers an array of personal credit information obtained from its credit reporting database." *Id.* at 6.

Unlike Trans Union's marketing lists, however, a Mosaic score is not generated from Experian's consumer credit database, FileOne, and it does not include ***any*** individual tradeline information.  Instead, as Skiles' own documents make clear, a Mosaic score is derived from information that "Experian Marketing Services has to offer," including "ConsumerView" and other "authoritative sources of market research, media, and digital behavior to build a . . . portrait of America's socio-economic, life stage, lifestyle and cultural diversity." (Dkt. No. 104-4.)  In other words, it is not information about a unique individual; instead, it is ***aggregated data*** about lots of individuals.  While Skiles points to "Summarized Credit Statistics" used in a Mosaic score, his own documents confirm that ***aggregated data*** does not constitute a consumer report.  (*See* Dkt. 104-1 at 27 (recognizing that "aggregate data . . . without reference to an individual consumer, is not a consumer report").)  In fact, the 2000 FTC opinion that Skiles cites specifically distinguished between ***aggregated data*** offered by Experian and Equifax and the individual data provided by Trans Union in finding that Trans Union's marketing lists constituted consumer reports.  (*See* Dkt. 104-3 at 12 ("Trans Union is unique among CRAs because it provides credit data on individuals. By contrast, the other CRAs provide consumer credit information on an 'aggregated' basis, i.e., information about a group of people. Both Experian and Equifax aggregate information about individuals' credit characteristics on a zip code or 'zip-plus-four' geographic basis.").)  No court or regulatory authority has determined that aggregated data constitutes a consumer report, and Skiles has not identified a single instance in which ***aggregated data*** about ***many individuals*** has been (or even might be) used in a credit transaction involving a unique individual—*i.e.*, to determine whether that individual qualifies for credit.

Nor can he.  This type of aggregated data is not "used, expected to be used, or ha[s] been collected, at least in part, for the purpose of serving as a factor in determining the consumer's eligibility for credit, insurance or employment." *Harrington v. Choicepoint Inc.*, No. 05-cv-01294-

MRP, 2006 WL 8198396, at *8 (C.D. Cal. Oct. 11, 2006).  To the contrary, as Skiles concedes, it is simply marketing information used to "anticipate the behavior, attitudes and preferences of consumer."  Dkt. 102 at 18.  Such behavioral data does not constitute a consumer report.  *See Arcidiacono v. Am. Exp. Co.*, No. 92-cv-3428, 1993 WL 94327, at *1–3 (D.N.J. Mar. 29, 1993) (holding that information sold by a credit company about consumers that was divided into "consumer categories" such as "fashion conscious" and "Fifth Avenue sophisticated" was not a "consumer report" because it was used "to market . . . products and services" and not for eligibility determinations).  This is because "behavioral data" is not collected or used by third parties in connection with credit transactions, and thus is not "subject to either §§ 1681e or 1681g." *Steinmentz*, 2019 WL 4415090, at *8.[2]

In short, despite Skiles' protestations to the contrary, the "FCRA does not regulate the disclosure of all information that CRAs receive from financial institutions" or other third-parties. *Individual Reference Servs. Grp., Inc. v. F.T.C.*, 145 F. Supp. 2d 6, 16 (D.D.C. 2001). Rather, the statute regulates consumer specific "tradeline information." *Id.*  Indeed, if, as Skiles contends, demographic and behavioral data and other types of "publicly available information . . . qualifies a communication as a consumer report, then virtually any information about a person will be deemed to" constitute a consumer report. *Harrington*, 2006 WL 8198396, at *8; *see also Parker v. Equifax Info. Servs., LLC*, No. 15-cv-14365, 2017 WL 4003437, at *3 (E.D. Mich. Sept. 12, 2017) ("[B]iographical information . . . does not constitute a consumer report because the information does not bear on Parker's credit worthiness."). The FCRA is not so broad, and Skiles' attempt at transforming it into an all-encompassing data privacy statute should be rejected.

**B.**   <u>**Skiles' FCRA Claims Are Facially Invalid**</u>

Even if a Mosaic Report is a consumer report (it is not), Skiles' claims still fail on their merits.  Skiles alleges—and now in his opposition ***concedes***—that Tesla certified to Experian that

---

[2] Skiles contends that *Steinmetz* is distinguishable because his complaint affirmatively alleges that a Mosaic score is a consumer report.  (Opp. at 12.)  But the plaintiff in *Steinmetz* made almost the same type of allegations as Skiles makes here, claiming that Experian's ConsumerView data segments consumers and clearly impacts consumers' creditworthiness. (RJN Ex. 1, ¶¶ 131-137.)  As the *Steinmetziz* court properly recognized, however, these claims "are fatally deficient" and "rest[] on erroneous interpretations of the FCRA."  *Steinmetz*, 2019 WL 4415090, at *10.

1   it intended to use the Mosaic score for a permissible purpose.  Skiles posits several arguments

2   regarding why his claim under Section 1681b can proceed in the face of the allegations in his

3   complaint and the admissions in his opposition.  None succeed.

4        First, Skiles argues that "where the defendant **obtained** a consumer report without consent

5   in response to mere comparison-shopping behavior," it is a violation of Section 1681b.  (Opp. at

6   14:3-6 (emphasis added).)  There are multiple flaws with this argument.  To begin with, Experian

7   did not "**obtain**" any consumer report.  Instead, the Section 1681b claim that Skiles pleads against

8   Experian alleges that Experian **furnished** a consumer report to Tesla.  While Skiles argues that it

9   was impermissible for Experian to furnish Tesla with a Mosaic score while he was "comparison

10  shopping," there is **no allegations** that Experian was aware that Skiles was merely "shopping" when

11  Telsa requested a Mosaic score.  Indeed, Skiles **purchased** a Tesla from the dealership at which he

12  was "shopping," which makes his "shopping" versus "purchasing" distinction all the more dubious.

13       Regardless, as the Ninth Circuit has explained, "[a] consumer reporting agency rarely has

14  direct contact with the persons about whom it accumulates information."   *In re Gren*, 633 F.2d

15  825, 828 (9th Cir. 1980).  Instead, "it is usually the person, firm or organization granting credit who

16  has contact with the affected consumer; while the consumer reporting agency is merely the

17  repository of all known information collected in a variety of ways about the individual involved."

18  *Id*.  By statute, Experian does not need to have direct knowledge of whether Skiles was still

19  "shopping" or "buying" when it furnished the Mosaic score to Tesla.  Instead, in order to comply

20  with the law, Experian only needed to have a "*reason to believe*" that Tesla requested the Mosaic

21  score for a permissible purpose.  *See Harris v. Database Management & Marketing, Inc.*, 609 F.

22  Supp. 2d 509, 514-15 (D. Md. 2009) (emphasis in original); *Douglass v. USAA Casualty Insurance,*

23  *Inc.*, 718 Fed. Appx. 523, 526 (9th Cir. 2017) (same).  And here, not only does Skiles affirmatively

24  plead that Experian furnished the Mosaic score to "serv[e] as a factor in establishing Plaintiff's

25  eligibility for credit to be used to purchase a vehicle for personal use," *see* FAC, ¶ 88, his opposition

26  **admits** that Tesla expressly told Experian that it was requesting the Mosaic score for a permissible

27  purpose:  "***Plaintiff alleges that Tesla provided Experian with the simple recitation that the***

28  ***consumer report was going to be used for establishing consumer's eligibility for credit***."  (Opp.

at 17:23-24 (emphasis added).)  Stopping right there, that concession establishes that Experian had a valid "reason to believe" that the Mosaic score was being furnished for a permissible purpose, which conclusively forecloses a permissible purpose claim under Section 1681b.

*Abbink v. Experian Information Solutions, Inc.*, Case No. 19-cv-1257-JFW-PJWx, 2019 WL 6838705 (C.D. Cal. Sept. 20 2019), is on all fours.  There, the plaintiff claimed that Experian violated Section 1681b by furnishing a consumer report to a company named LendTech.  Plaintiff contended that Experian should have known that LendTech lacked a permissible purpose based on certain "red flags."  Plaintiff claimed that a reasonable investigation would have uncovered that LendTech, which held itself out as a mortgage lender, did not "possess any license to conduct any financial services or mortgage lending or originating in the State of California."   In addition, Plaintiff alleged that LendTech provided Experian with a nonworking telephone number and an outdated business address.  Plaintiff maintained that, despite these "red flags," Experian accepted LendTech's certification of its permissible purpose "at face value."

The district court rejected plaintiff's claim, and granted Experian's motion to dismiss plaintiff's permissible purpose claim with prejudice.  The court explained that "Plaintiff has failed to allege any facts demonstrating that Experian knew, or had any indication, that LendTech would not issue firm offers of credit or that it was reselling Plaintiff's information[.]"  *Id*. at *3.  "To the contrary," the court noted, "Plaintiff affirmatively alleges that Experian furnished Plaintiff's consumer report to LendTech ***based on LendTech's "representation that it intended to use [the] report for the purpose of a firm offer of credit***."  *Id*. (emphasis added).  "Thus, Plaintiff admits that Experian had 'reason to believe' that it was furnishing Plaintiff's consumer report in accordance with Section 1681b(c)(1)."  *Id*.  So too here, Skiles ***admits*** that Experian furnished Tesla with a Mosaic score only ***after*** Telsa provided Experian with a "recitation" that "the consumer report was going to be used for establishing consumer's eligibility for credit."  (Opp. at 17:23-24.)  "Thus, [Skiles] admits that Experian had 'reason to believe' that it was furnishing Plaintiff's consumer report in accordance with Section 1681b."  *Abbink*, 2019 WL 6838705, at *3.

None of the cases that Skiles relies upon holds differently.  (*See* Opp. at 14:6-14 (citing *Boone*, *Traveler*, *Qureshi*, and *Heaton*.)  Each of those cases involved a permissible purpose claim

1  against the company that had **requested** the consumer report (here, Tesla), rather than the consumer

2  reporting agency that furnished the report.  In each of those cases, the courts found that because the

3  plaintiffs were shopping, but ultimately did not transact, it was impermissible for the credit grantor

4  to request a consumer report.  Significantly, **none** of those cases found that the **consumer reporting**

5  **agency** violated the FCRA in furnishing a consumer report to the credit grantor under those

6  circumstances because, like here, there was no showing that the consumer reporting agency was

7  even aware that the plaintiffs were "shopping," and had decided not to buy.

8       The FTC orders that Skiles cites, *see* Opp. at 14:21-15:15, are inapposite for the same

9  reason:  Those orders, just like the cases Skiles relies upon, concern the circumstances under which

10  a **credit grantor** may request a consumer report.  **None** of those orders finds that a consumer

11  reporting agency violates the FCRA for furnishing a consumer report to a creditor grantor absent a

12  showing that the consumer reporting agency was **actually aware** that the consumer report was being

13  requested for an impermissible purpose.  Here, again, there is no allegation that Experian was aware

14  that Tesla had requested a Mosaic score for an impermissible purpose.  On the contrary, Skiles

15  pleads—and now in his opposition admits—that Telsa told Experian that it was requesting a Mosaic

16  score for a permissible purpose, which defeats his claim.[3]

17       Second, like the plaintiff in *Abbink*, Skiles claims that there were certain "red flags" that

18  should have alerted Experian that, notwithstanding Telsa's certification to the contrary,

19  Tesla intended to use the Mosaic score for an impermissible purpose.  None have merit.

20       ▪   Skiles' contention that Tesla did not "provide[] Experian with any kind of

21  supporting documents (*i.e.* purchase agreement, credit application, written consent) to allow

22  **Experian to certify** Tesla's alleged purpose was in fact true," *see* Opp. at 17:23-26 (emphasis

23  added), misstates the law.  The certification requirement under Section 1681e(a) is on **Tesla**—the

24  prospective user of the information—**not** Experian.  *See* 15 U.S.C. § 1681e(a) ("These procedures

25  shall require that **prospective users** of the information identify themselves, certify the purposes for

26

27       [3] Nor, with regard to Tesla, is there any allegation that Telsa requested a Mosaic score while
   Skiles was "shopping."  While Skiles argues that he "allege[d] that Tesla pulled Plaintiff's
28  consumer report when Plaintiff merely requested a test drive," Opp. at 14:15-16 (citing FAC, ¶ 9-
   21), those cited paragraphs do **not** so allege.

REPLY MEMORANDUM IN SUPPORT OF
                                                          MOTION TO DISMISS UNDER RULE 12(B)(6)
                                                          Case No. 3:17-cv-05434-WHO

which the information is sought . . . ."). And, as Skiles admits, Telsa provided Experian with the required certification. (*See* Opp. at 17:23-24.) In so doing, the FCRA does not require the credit grantor to provide a consumer reporting agency with a "purchase agreement" or a "credit application" before obtaining a consumer report. If that was the requirement, consumer credit transactions would grind to a halt. Instead, the law requires that the credit grantor "certify" that the consumer report will be used for a permissible purpose, *see* 15 U.S.C. § 1681e(a), which Skiles admits Tesla did. *See Scharpf v. AIG Marketing, Inc.*, 242 F.Supp.2d 455, 459 (W.D. Ky. 2003).

▪    Skiles' contention that Experian should have realized that Tesla provided a false certification because the Mosaic score was furnished while he was still "shopping," *see* Opp. at 17:7-12, has no factual support. There are ***no allegations*** that Experian was aware of the stage of the buying process at which Tesla requested the Mosaic score and certified to Experian that it would be used for a permissible purpose. Indeed, there are ***no allegations*** as to ***when*** Experian furnished the Mosaic score. Instead, Skiles alleges that Experian provided Tesla with a Mosaic score sometime after Tesla had transferred Skiles' driver's license information to Experian. (FAC, ¶¶ 27-30.) Moreover, even if the furnishing of the Mosaic score occurred contemporaneously with the transfer of Skiles' driver's license information, there is ***no allegations*** that Experian was aware that such transfer occurred while Skiles was "shopping."

▪    Skiles' contention that "Experian provided the consumer report despite knowing that Tesla had obtained the information from the consumer's driver's license at the test drive phase without the consumer consent," *see* Opp at 18:1-3 (citing FAC ¶¶ 30, 56-57, 62-63, 77), is unsupported by factual allegations and is legally irrelevant. To begin with, none of the paragraphs that Skiles cites alleges such "knowledge" on Experian's part. Regardless, even if Tesla had obtained Skiles' driver's license information without Skiles' "consent"—and Tesla did ***not*** because Skiles affirmatively alleges that he voluntarily provided Tesla with his driver's license to scan (*see* FAC, ¶ 23)—it does not mean that Experian furnished a consumer report without having a reasonable belief that it was for a permissible purpose, which is the legal standard.

▪    Skiles' final supposed "red flag"—that "Experian received consumer information from a driver's license, instead of a consent form to pull credit" (*see* Opp. at 18:7-8)—is belied by

the facts alleged. Skiles admits Telsa separately certified to Experian "that the consumer report was going to be used for establishing consumer's eligibility for credit." (*See* Opp. at 17:23-24.) Thus, the form within which Experian obtained Skiles' information is irrelevant.

In short, ***none*** of the supposed "red flags" that Skiles identifies in his opposition would have revealed to Experian—which is processing millions of credit requests per day—that Tesla had made a false certification. That is why this case is very different than *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118 (11th Cir. 2006). In *Levine*, the consumer reporting agency, prior to furnishing a consumer report, had ***objective data in its possession*** showing that the credit grantor may have requested a consumer report for an impermissible purpose. There, the creditor had requested a consumer report for "account review" purposes, even though the account was "paid in full" and "closed." The consumer reporting agency—***based upon its own internal records***—knew the account was "closed for years" and had a "undisputed zero balance." Thus, the *Levine* court found that an issue of fact existed as to whether the consumer reporting agency should have known that the stated purpose for the consumer report—an "account review"—was a legitimate one. Here, there are ***no allegations*** that Experian possessed objective facts by virtue of its internal records—much less any facts at all—that contradict the certification that Tesla provided. Instead, the facts alleged establish that Tesla is in the business of selling automobiles and, for one of its customers, certified to Experian that it was requesting a Mosaic score "to be used for establishing [a] consumer's eligibility for credit" to purchase a car (which Skiles did). Just as in *Abbink*, the Section 1681b claim fails as a matter of law.[4]

<u>Third</u>, Skiles argues that, even if "Experian believed Tesla was going to use Plaintiff's consumer report for one permissible purpose (establishment of credit)," it was nonetheless impermissible for Experian "to turn a blind eye towards any impermissible uses." (Opp. at 16:13-

---

[4] Skiles' assertion that it was Experian's "duty" to "ensure" that Tesla obtained the Mosaic score for a permissible purpose, *see* Opp. at 17:7-12, misstates the law. The FCRA does ***not*** require Experian to "ensure" that that Tesla obtained a consumer report for a permissible purpose. Instead, both the face of the statute, and the case law applying it, require that Experian have a "reason to believe" that a consumer report was obtained for a permissible purpose. *Harris*, 609 F. Supp. 2d at 514-15. And here, Skiles admits that Tesla told Experian it was requesting the Mosaic score for a permissible purpose, which is dispositive. *Abbink*, 2019 WL 6838705 at *3.

17.)   That argument reflects a fundamental misunderstanding of law, which has been roundly rejected by courts in deciding claims under Section 1681b.  Simply put, even if Tesla ultimately **used** the Mosaic score for an impermissible purpose, that is not relevant in determining whether Experian violated Section 1681b, which focuses on purpose for which the report was **furnished**.  *Harris*, 609 F. Supp. 2d at 514 ("[Plaintiff] argues that [CRA] violated Section 1681b by selling information from [plaintiff's] consumer report to NameSeeker, which NameSeeker did not use for transactions involving firm offers of credit. However, NameSeeker's ultimate use of [plaintiff's] information is not determinative of [CRA's] liability under the statute.").  Just like the plaintiff in *Harris*, Skiles "conflates the purpose for which a report is furnished and the purpose for which it is used."  *Henderson*, 161 F. Supp. 3d at 397 n.7.  Only the former is relevant for purposes of a Section 1681b claim.  *Id*. ("Decisional law interpreting § 1681(b) . . . demonstrates this distinction: to show that a report was 'furnished'. . .  a CRA need only show that it had 'reason to believe' that the report would be used for that purpose, and obtained appropriate certifications from its customers that the report would be used only for that purpose.") (collecting cases)).

Regardless, there are **no allegations** that Experian was aware that Tesla would use the Mosaic score for "any impermissible uses."  The cases that Skiles cites do not assist him.  (Opp. at 23:19-26 (citing *Lukens* and *Rodriguez*).)  Both cases concerned companies that **obtained** consumer reports for a permissible purpose, but then used the reports for impermissible purposes.  These cases did not involve claims against a consumer reporting agency—the furnisher of the consumer report—much less a claim that a consumer reporting agency furnished a consumer report with knowledge that it would be used for an impermissible purpose.

Fourth, Skiles contends that "Experian can be liable for the Tesla's impermissible use when the Experian fails to comply with the statutory obligations imposed by 15 U.S.C. § 1681e."  (*See* Opp. at 16:27-17:6 (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).)  The argument is unavailing.  Skiles does **not** allege a claim under Section 1681e.  The only claim that Skiles pleads against Experian is a violation of Section 1681b which, as demonstrated, focuses on purpose for which a consumer report was **furnished**, not on the purpose for which it was used.  *Henderson*, 161 F. Supp. 3d at 397 n.7; *Harris*, 609 F. Supp. 2d at 514.  While a consumer

reporting agency "may not furnish reports if 'reasonable grounds' exist to believe that reports will be used impermissibly," *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106, 1114-1115 (9th Cir. 2009), there are **no allegations** that Experian was aware that Tesla would use a Mosaic score for an impermissible purpose.  Skiles admits the opposite—conceding that Tesla told Experian that the Mosaic score would be used for a permissible purpose.[5]

In any event, "'[a] plaintiff bringing a claim that a reporting agency violated the 'reasonable procedures' requirement of § 1681e must first show that the reporting agency released the report' for an impermissible purpose under section 1681b."  *Moreland v. CoreLogic SafeRent LLC*, No. 13-cv-470, 2014 WL 12783274, at *2 (C.D. Cal. May 12, 2014) (quoting *Washington v. CSC Credit Servs.*, 199 F.3d 263, 266 (10th Cir. 2000)).  "If a plaintiff can't show the report was released for an improper purpose, there is no basis to challenge the consumer reporting agency's preventative procedures."  *Id.* (collecting authorities); *Abbink*, 2019 WL 6838705 at *3 (same).  Here, Skiles admits that Experian furnished a Mosaic score for a permissible purpose.

<u>Fifth</u>, Skiles contends that he "did not consent to [the] use of his driver's license information by Experian to produce a consumer report, nor did [he] consent to the receipt or use of such consumer report by Tesla."  (*See* FAC, ¶ 89.)  The argument fails.  In order to furnish a consumer report, Experian need only have a "reason to believe" that it was being requested for a permissible purpose.  Thus, whether Skiles provided "consent" to Telsa to obtain a Mosaic score is irrelevant. Skiles admits that Telsa told Experian that it was requesting the report for a permissible purpose, which Experian may rely upon. *Abbink*, 2019 WL 6838705 at *3.  Regardless, as Experian's motion demonstrated, "consumer consent is only required for consumer reports issued for **employment purposes**."  (Dkt. 99 at 12-13 (citing *Rosco v. Experian Info. Sols.*, 2017 WL 6061977, at *7 (E.D. Wash. Dec. 7, 2017); *Jones v. Best Serv. Co.*, 2017 WL 490902, at *7 (C.D. Cal. Feb. 6, 2017), *aff'd*, 700 F. App'x 580 (9th Cir. 2017) (dismissing FCRA claim where it was "almost entirely

---

[5] Skiles' citation to *Guimond* is confusing.  The statutory obligations on consumer reporting agencies vis-à-vis the furnishing of consumer reports are found in Section 1681e(a).  *Guimond* has nothing to do with that subsection.  Indeed, that section of the FCRA is not even cited in the opinion. Instead, *Guimond* concerned Section 1681e(b), which requires a consumer reporting agency to have "reasonable procedures" to ensure the maximum possible accuracy of consumer reports, which has nothing to do with the case at hand.

predicated on the *erroneous assertion* that Defendant was required to secure Plaintiff's express consent to access his credit report for any reason"); *Stergiopoulos v. First Midwest Bancorp, Inc.*, 2004 WL 5550488, at *3 (N.D. Ill. June 23, 2004) (same).)

Skiles argues that *Rosco* was decided at the summary judgment stage. (Opp. at 15:17-22.) But that is distinction without a difference. *Rosco's* holding that "consumer consent is only required for consumer reports issued for employment purposes" is a statement of law, which applies with equal vigor at the pleadings stage and at summary judgment. Skiles also contends that *Rosco's* holding was "dicta." *Id.* Not so. It was a recitation of law supporting the dismissal of the plaintiff's Section 1681b claim. Skiles argues that "the plaintiffs in *Rosco* were pro se plaintiffs that 'fail[ed] to identify any specific third parties that viewed Experian credit reports for Plaintiffs' or 'identify any specific impermissible purpose for which Experian allegedly furnished a report.'" *Id.* These distinctions are not well-taken. The point of *Rosco* is that, absent a consumer report issued for employment purposes, the FCRA does not require consent. That holding obtains regardless of whether a plaintiff is pro se, a third party viewed a credit report, or whether a plaintiff identifies "any specific impermissible purpose" for which the report was furnished. Skiles attempts to distinguish *Jones*, which reached the same conclusion as *Rosco*, on the ground that the plaintiff was pro se and never alleged an impermissible purpose. (Opp. at 15:25-28.) These distinctions also are unmeritorious. The holding in *Jones* is an accurate statement of law that consent is not required absent a consumer report issued for employment purposes. That is true regardless of whether a plaintiff is pro se or how he or she pleads the case. Skiles' attempt to distinguish *Stergiopoulos* is even further afield. Skiles does not contend that *Stergiopoulos*—which reached the **same** conclusion as *Rosco* and *Jones*—was wrongly decided. Instead, Skiles argues that *Stergiopoulos* "was narrowly *upheld* by the 7th Circuit on appeal"—*i.e.*, it *rejected* Skiles' argument.

In sum, Telsa did not need Skiles' consent to request a Mosaic score, and because Experian had reason to believe that Tesla would use the report for a permissible purpose, the claim fails.

## III.    THERE ARE NO ALLEGATIONS TO SUPPORT A WILLLFULNESS CLAIM

None of Skiles' arguments in support of his willful violation claim pass muster.

He claims that two FTC opinions have "stated that reports identical to the Mosaic score

1  constitute consumer reports." (Opp. at 27:16-18.)  Not so.  Those reports confirm that the type of

2  information included in a Mosaic score—*i.e.*, aggregated information and demographic and

3  behavioral data—does not constitute a consumer report.  (*See* Dkt. 104-1 at 27 (recognizing that

4  "aggregate data . . . without reference to an individual consumer, is not a consumer report"); Dkt.

5  104-3 at 12-14 (distinguish between reports based on individual consumer tradeline information

6  and aggregate information).)  Thus, Skiles does "not cite any statutory language or any guidance

7  from the courts of appeal or the Federal Trade Commission" concluding that a Mosaic score is a

8  consumer report.  *Banga v. Experian Info. Sols., Inc*., No. 09-cv-04867, 2013 WL 5539690, at \*6

9  (N.D. Cal. Sept. 30, 2013).  To the contrary, courts have specifically found that the marketing data

10  in ConsumerView—*the source of information for a Mosaic score*—is not "regulated by the

11  FCRA," and are not "either consumer reports or consumer disclosures subject to either §§ 1681e or

12  1681g."  *Steinmetz*, 2019 WL 4415090, at \*8; *Arcidiacono*, 1993 WL 94327, at \*1–3 (same).

13  Thus, Skiles cannot establish a willful violation.  *See Heyer v. Experian Info. Sols. Inc.*, No. 19-cv-

14  15, 2019 WL 2869337, at \*3 (E.D. Wis. July 3, 2019) ("The willfulness standard is therefore not

15  met where the defendant's interpretation 'could reasonably have found support in the courts.'").[6]

16  **IV.   CONCLUSION**

17          Because his allegations "are fatally deficient," and his legal theories "rest[] on erroneous

18  interpretations of the FCRA," any amendment "would be futile" and Skiles' claims should be

19  "dismissed with prejudice." *Steinmetz*, 2019 WL 4415090, at \*10; *see also Telesaurus VPC, LLC*

20  *v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

21  Dated:  January 31, 2020                              JONES DAY

22                                                                      By:  */s/ John A. Vogt*
                                                                                John A. Vogt
23                                                                       Attorneys for Defendant
                                                                          EXPERIAN INFORMATION SOLUTIONS, INC.

24  _____

25          [6] Skiles asserts that despite "substantial warning signs and notice that Experian's Mosaic
    score was a consumer report," Experian provided the report to Tesla.  But Skiles' complaint "is
26  devoid of any factual allegations concerning Experian's state of mind or its knowledge that" Tesla
    was misusing the Mosaic score.  *Abbink*, 2019 WL 6838705, at \*5.  "In order to survive a motion
27  to dismiss, the plaintiff's complaint must allege specific facts as to the defendant's mental state.
    Merely stating that the violation was 'willful' or 'negligent' is insufficient."  *Id.*  Because Skiles
28  only "makes generic and conclusory statements,"  his claim must be dismissed.  *Id.*