UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE SKILES, | Case No. 17-cv-05434-WHO |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTIONS TO DISMISS** |
| TESLA, INC., et al., | Re: Dkt. No. 117, 118 |
| Defendants. | |

Defendants Tesla, Inc. ("Tesla") and Experian Marketing Services, Inc. ("Experian") move to dismiss plaintiff Wayne Skiles's Second Amended Complaint ("SAC"). Skiles alleges that Tesla violated the Fair Credit Reporting Act ("FCRA") when Experian provided Tesla with a "Mosaic score," a marketing report based upon aggregate data, at the time that Skiles visited Tesla's showroom. There are many problems with Skiles's theory of the case. Most importantly, Skiles fails to allege that the Experian's "Mosaic score" is a "consumer report" under the definition set forth in the FCRA. He also fails to state that Experian is a "consumer reporting agency" under the statute or that the defendants acted willfully. For these reasons, the defendants' motions to dismiss are GRANTED, and Skiles's SAC is dismissed WITH PREJUDICE.

## BACKGROUND

Skiles first filed this action on September 19, 2017 and filed an amended complaint ("FAC") on December 22, 2017. Dkt. Nos. 1, 61. After I granted the defendants' motions to dismiss, he filed the SAC, which includes the same primary allegations as the FAC. Dkt. No. 111 ("SAC"). Dkt. No. 111 ("SAC"). He alleges that in August of 2015, he visited a Tesla vehicle showroom in Newport Beach, California. *Id.* ¶ 15. A Tesla employee approached him and offered to let him test drive a Tesla car. *Id.* ¶¶ 16-17. Skiles stated that he was interested. *Id.* ¶ 17. The Tesla employee then requested Skiles's driver's license, which Skiles believed was for

1    the purpose of verifying that he was permitted to operate a motor vehicle, but which Tesla in fact

2    used to obtain a report from Experian called a "Mosaic score." *Id.* ¶¶ 18-38.  Skiles was not

3    provided an opportunity to consent to this use of his driver's license.  *Id.* ¶ 38.

4            Tesla filed a motion to dismiss and to compel arbitration on January 24, 2018.  Dkt. No 64.

5    I granted Tesla's motion to compel arbitration and stayed the case.  Dkt. No. 76.  After the

6    arbitrator found that Skiles's claims were not subject to arbitration, I granted Skiles's request to

7    lift the stay.  Dkt. No. 98.  The parties subsequently resumed briefing on Tesla's original motion to

8    dismiss the FAC filed in 2017.  Dkt. Nos. 64, 99, 102, 103.  On February 19, 2020, I granted the

9    defendants' motions to dismiss with leave to amend, and allowed Skiles to substitute the

10   appropriate Experian entity as a defendant.  Dkt. No. 110 ("Order").  Skiles filed the SAC on

11   March 9, 2020, which both defendants move to dismiss.  Dkt. Nos. 117, 118.

12                                **LEGAL STANDARD**

13           Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

14   if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

15   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

16   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when

17   the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant

18   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  There must be

19   "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not

20   require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a

21   right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

22           In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

23   Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

24   plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is

25   not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

26   fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

27   2008) (citation omitted).  "Dismissal can be based on the lack of a cognizable legal theory or the

28   absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

United States District Court
Northern District of California

*Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

## DISCUSSION

### I.  WHETHER THE MOSAIC SCORE IS A CONSUMER REPORT AND EXPERIAN IS A "CONSUMER REPORTING AGENCY"

In my prior Order, I held that Skiles alleged facts sufficient to show that the Mosaic Score satisfied the first prong of the FCRA's definition of a "consumer report."  Order at 4.  However, I found that Skiles did not satisfy the second prong, stating that "to plead that the Mosaic score is a 'consumer report' . . . Skiles must allege that it was used or expected to be used in connection with one of the 'specifically enumerated transactions' in Section 1681a(d) or Section 1681b(3)(A)-(E), '*i.e.,* credit, insurance eligibility, employment, or licensing.'"  *Id.* at 5.  I also stated that Skiles must allege facts with respect to Experian's (instead of Tesla's) expectations regarding the use of the report.  *Id.* at 6.

Skiles contends that the Mosaic Score is a consumer report because it is a collection of data used at least in part as a factor in making credit determinations, and because Experian expected that it would be used as a factor in making credit decisions.  Dkt. No. 120 at 5-6.  The SAC alleges that "[o]ne source of summarized credit that makes up the Mosaic Score is from Experian's Summarized Credit Statistics, which Experian advertises as 'information [that] effectively targets consumers for a diverse range of marketing offers, such as invitations to apply for a credit card, home equity loans or financial advisement services.'"  SAC ¶ 31.  The Mosaic score provides "detailed information on the consumer which is vital in deciding to establish credit, such as the individual's age, income, and even credit worthiness."  *Id.* ¶ 33.  Skiles alleges that in making the Mosaic score, "Experian took into consideration factors bearing on Plaintiff's credit worthiness, personal characteristics, and mode of living, among other things."  *Id.* ¶ 61.  Experian was aware that purchasers of the Mosaic score would rely on the information in the report to determine eligibility for credit, in part because it includes information such as "summarized credit and automotive data" and because of the expensive nature of Tesla vehicles.  *Id.* ¶¶ 64-65.

Tesla allegedly obtained the Mosaic score for both marketing and sales purposes, and to determine eligibility for an extension of credit to purchase a Tesla car.  *Id.* ¶ 35.  "Upon

United States District Court
Northern District of California

3

1    information and belief," Experian was aware of Tesla's practices of obtaining the Mosaic score for

2    the dual purpose of marketing and for credit evaluations.  *Id.* ¶ 69.  Skiles further alleges that

3    "Experian knew, or should have known, that Tesla was using a consumer report for this

4    impermissible purpose when Experian integrated its consumer data systems with the Appstem

5    application and Salesforce profiles, such that Mosaic scores were automatically and

6    instantaneously produced with the driver's license being scanned and uploaded to the Salesforce

7    profile."  *Id.* ¶ 80.

8        In arguing that these allegations adequately plead that the Mosaic score is a consumer

9    report within the definition of the FCRA, Skiles relies heavily on the *content* of the Mosaic score

10    to support inferences that Experian expected Tesla and others to use the report for credit

11    determinations.  *See* Dkt. No. 120 at 7; Dkt. No. 121 at 8.  He argues that inclusion of such data

12    demonstrates that Experian intended for this information to be used in establishing credit, as well

13    as for marketing purposes.  Dkt. No. 120 at 7; Dkt. No. 121 at 8.  Similarly, he states that "[i]t can

14    be inferred from these facts that Experian expected the Mosaic Score would be utilized to

15    establishing consumer's credit eligibility.  Dkt. No. 120 at 8.

16        Much of this information supports my prior finding that the Mosaic score is a "written,

17    oral, or other communication of any information by a consumer reporting agency bearing on a

18    consumer's credit worthiness, credit standing, credit capacity, character, general reputation,

19    personal characteristics, or mode of living."  15 U.S.C.A. § 1681a(d)(1).  However, this

20    information does not necessarily lead to an inference that the report also satisfies the second prong

21    of the statute's definition—that it is used or expected to be used or collected in whole or even in

22    part for the purpose of serving as a factor in establishing the consumer's eligibility for credit-

23    related decisions.  *Id.*  To hold otherwise would render the second element of "consumer report"

24    superfluous.

25        The contents of the Mosaic score contradict an inference that the reports are collected,

26    used, or expected to be used for credit-related decisions.  The documents cited in the SAC (and

27    incorporated by reference) and the documents in Skiles's request for judicial notice

28    overwhelmingly portray the Mosaic score as a marketing tool.  *See* Dkt. No. 122-3 at 3 (stating

United States District Court
Northern District of California

United States District Court
Northern District of California

that users of the Mosaic score "use it to maximize their engagement with customers to increase loyalty, retention and value; drive profitable acquisition; and plan for the future" and touting its ability to determine customer strategy, target customer audience, and analyze consumer behavior); Dkt. No. 117-2 at 3 ("Through Mosaic, we provide marketers with the most accurate and comprehensive view of their customers, prospects, and markets."). Skiles does not identify a single portion of the report or materials related to the report describing utility in evaluating credit eligibility; statements describing a consumer as "credit aware" cannot reasonably be used to determine credit eligibility. *See* Dkt. No. 122-3 at 19.

Skiles emphasizes the SAC's assertion that the Mosaic score is created from Experian's Summarized Credit Statistics and points to its use of "summarized credit and automotive data." Dkt. No. 120 at 7, 16. The SAC describes this data as "information [that] effectively targets consumers for a diverse range of marketing offers, such as invitations to apply for a credit card. . ." SAC ¶ 31. But a "marketing offer" such as an invitation to apply for a credit card is not the same thing as a determination of credit eligibility. *See Tailford v. Experian Info. Sols., Inc.*, No. SACV1902191JVSKESX, 2020 WL 2464797, at *2, 5 (C.D. Cal. May 12, 2020) (evaluating Experian's database that uses Summarized Credit Statistics, and stating that "using information to identify a pool of potential credit applicants is not the same as using information to determine credit eligibility").[1]

The Experian documents show that aggregate statistics are used to create a Mosaic score. Dkt. No. 123 at 4. While I held previously that this does not prevent a finding that the Mosaic score satisfies the first prong of the "consumer report" definition, this fact does reduce the plausibility of Skiles's allegation that Experian expected the score to be used as a factor in individual credit determinations. Accordingly, the content of the Mosaic score alone does not support an inference that the score is a consumer report.

---

[1] Skiles's request for judicial notice and motion for leave to file a sur-reply are GRANTED. Dkt. Nos. 122, 125. Experian's request for judicial notice refers in part to materials incorporated by the complaint, and is not opposed. To the extent I rely upon these materials in this Order, Experian's request is GRANTED; it is otherwise DENIED AS MOOT. Dkt. No. 117-1. Tesla's request for judicial notice, to which Skiles objects on authenticity grounds, is DENIED AS MOOT. Dkt. Nos. 118-1; 120-1.

United States District Court
Northern District of California

1        While the Mosaic score's primary use as a marketing tool does not necessarily preclude it

2   from being a consumer report under the FCRA, the SAC lacks facts necessary to support this

3   inference.  The remaining allegations in the SAC on this point are either conclusory or

4   implausible.  Skiles alleges that Tesla offers credit financing services and thus would have reason

5   to use the report to make credit determinations.  Dkt. No. 121 at 8.  But the fact that Tesla offers

6   credit financing services does not mean that Experian would expect the Mosaic score to be used in

7   connection with those services.  Notably, Skiles does not allege that the Mosaic score was used,

8   even as a factor, related to Tesla's credit financing services.  And in his opposition, he states that

9   he does not contend that Tesla in fact used the Mosaic score to make a determination of credit

10  eligibility for him.  Dkt. No. 120 at 6.  Skiles does not allege a single instance in which a Mosaic

11  score was used to make a credit eligibility determination by Tesla, nor has he alleged that Mosaic

12  scores are generally used by any other businesses as a factor in credit determinations.  The

13  inference that Skiles proffers is too attenuated to raise the right to relief above a speculative level.

14       Skiles also alleges that Experian integrated its consumer data systems with the Appstem

15  application and Salesforce profiles, and that the expensive nature of Tesla cars reinforces

16  Experian's expectation.  *Id.* at 9.  But he fails to explain how these facts support his allegations

17  that Experian expected the Mosaic score to be used in connection with a credit determination.

18  They do not facially support this inference.

19       Finally, the cases that Skiles cites for this point are distinguishable.  In *Hansen v. Morgan*,

20  the report at issue was a credit report from the Pocatello Credit Bureau that fell "directly" within

21  the FCRA's definition.  582 F.2d 1214, 1216, 1218 (9th Cir. 1978).  There was little dispute that

22  the Pocatello Credit Bureau expected such a report to be used to assess credit worthiness.  *Id.* at

23  1218.  In *Boothe v. TRW Credit Data*, the court noted that there was a dispute of fact regarding the

24  nature of the report, and the defendants argued that it was a credit report on the plaintiff's

25  business, not the plaintiff himself.  523 F. Supp. 631, 634 (S.D.N.Y. 1981).

26       Finally, in the Federal Trade Commission's ("FTC") *Trans Union* opinion, Trans Union

27  was undisputedly a consumer reporting agency.  Dkt. No. 122-2 at 4.  It gathered information on

28  consumers, including tradeline information, from credit grantors and used this information from

United States District Court
Northern District of California

1    its credit reporting database to sell to target marketers.  *Id.* at 5.  The FTC noted that Trans Union

2    was "in a special position" because it "has access to a vast array of very current and detailed

3    consumer information from its credit reporting business which affords it a distinct advantage as a

4    target marketer."  *Id.*  Notably, the court held that "[a] purchaser of a Trans Union target

5    marketing list knows that every consumer included has at least one tradeline and possesses

6    whatever additional characteristics the purchaser has specified."  *Id.* at 14.  Here, the information

7    in the Mosaic score is not alleged to be based upon tradeline information.  And the information is

8    aggregate, a fact that the FTC noted distinguished Trans Union from its competitors.  *Id.* at 11-12.

9    Skiles has failed to allege that the Mosaic score is a consumer report and, as a result, his FCRA

10   cause of action fails.

11       Experian and Tesla also argue that Experian is not a "consumer reporting agency."  I agree.

12   "The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a

13   cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or

14   evaluating consumer credit information or other information on consumers for the purpose of

15   furnishing consumer reports to third parties, and which uses any means or facility of interstate

16   commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C.A. § 1681a(f).

17   The SAC effectively alleges that because the Mosaic score is a consumer report, Experian is a

18   consumer reporting agency.  SAC ¶¶ 59-60.  Because the Mosaic score is not a consumer report,

19   this argument fails.

20       Moreover, Skiles fails to adequately state that, even if the Mosaic score were a "consumer

21   report" with respect to Tesla, that this Experian entity "regularly" provides consumer reports to

22   third parties.  The SAC alleges nothing about Experian's activities more broadly, stating only that

23   Experian provides the Mosaic score to "marketers around the world."  Dkt. No. 120 at 22.  Again,

24   the target of the Mosaic score to "marketers" undermines Skiles's contention that the Mosaic score

25   is a consumer report.  Indeed, as the defendants point out, Skiles does not cite any cases in which a

26   court has found that this Experian entity is a "consumer reporting agency."  Dkt. No. 124 at 13.

27   Skiles has failed to allege that Experian Marketing Services, Inc. is a consumer reporting agency.

28

7

## II.     SECTION 1681E

Section 1681e states that "[e]very consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C.A. § 1681e. As I noted in my prior Order, "courts have held that a violation of 1681b is a prerequisite to a claim under Section 1681e." Order at 8. Because the Mosaic score is not a consumer report, and Skiles has failed to allege a violation of Section 1681b, this claim fails.

Moreover, Skiles again failed to "provide any facts regarding what effort, if any, Experian made to verify that the uses purportedly certified by Tesla complied with the FCRA." *Id.* He does not allege a separate violation of Section 1681e or any allegations specific to this section. He argues that Experian's knowledge that Tesla would use the Mosaic score for an impermissible purpose violates Section 1681e, but for the reasons above, this argument fails. He also asserts that Experian failed to maintain reasonable procedures and states that "it would be impossible for a plaintiff to know the exact policies and procedures of a CRA, or what specific steps a CRA took to verify a third-party's use at the pleading stage." *Id.* He contends that "[c]ourts often look to the facts plead regarding the violation of § 1681b itself to infer whether the CRA had reasonable procedures." *Id.* at 15. But Skiles has provided no facts at all regarding a violation of Section 1681e. His attempt to piggyback this claim onto his Section 1681b claim is not adequate to state a claim. For these reasons, Skiles does not state a cause of action pursuant to Section 1681e.

## III.     WILLFUL VIOLATION

Even if the SAC stated a claim for a violation of the FCRA, Skiles has not adequately alleged that Experian or Tesla acted willfully. The parties agree that the defendants can only be liable for FCRA violations if they were willful—either knowing or with reckless disregard for the requirements imposed under the FCRA. Dkt. No. 117 at 13-14; Dkt. No. 118 at 10; Dkt. No. 120 at 10. They also agree that a "defendant that violates the FCRA based on an erroneous, but objectively reasonable, reading of the statute does not act recklessly." Dkt. No 117 at 14; Dkt. No. 118 at 10; Dkt. No. 120 at 10-11.

Skiles largely recycles his conclusory arguments in support of his claim for FCRA

8

1  violations, stating that Experian knew of Tesla's impermissible use and knew or should have

2  known that its Mosaic report was a regulated credit report.  Dkt. No. 121 at 17-25.  He also argues

3  that the willfulness challenge is premature.  *Id.* at 25.  But even if the FCRA's definition of

4  "consumer report" encompassed the Mosaic report, and even if Experian and Tesla did not have a

5  "permissible use" for that report, the law on this point is neither established nor clear.  There is no

6  plausible argument that the law unambiguously demonstrated that the Mosaic score was a

7  consumer report or that Experian was a consumer reporting agency.  Skiles pleads no additional

8  facts in the SAC that even suggest willfulness on the part of either defendant.  *See Tailford*, 2020

9  WL 2464797, at *7 (C.D. Cal. May 12, 2020) (allegation that "Experian does, or should,

10  recognize the disclosure failures outlined" in the complaint was not sufficient to plead willful

11  violation of FCRA).  Accordingly, even if Skiles had stated a valid FCRA claim, he cannot show

12  that Tesla or Experian acted willfully.

**CONCLUSION**

14  For the above reasons, the defendants' motions to dismiss are GRANTED.  Because this is

15  Skiles's third attempt to state a claim, and his allegations demonstrate that he cannot state a claim

16  for relief, the SAC is dismissed with prejudice and judgment will be entered accordingly.

17  **IT IS SO ORDERED.**

18  Dated: July 15, 2020

William H. Orrick
United States District Judge

United States District Court
Northern District of California

9